Ronald Charles Vrooman General Delivery, Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

141
142
143
144
145   **Attachments:**
146   Challenge of Jurisdiction to the prosecutor
147   Medical letter from Sarah Goodlin M.Dd.
148   **Notice:**
150   1) the record of all the documents filed into this court of record's file by Ronald Charles
151   Vrooman, are to be seen as attached, that John T. Mercer judge of Beaverton Municipal Court
152   denied in his Dec. 28, 2016 filing he signed.
153

154   **Footnotes** (per paragraph # 7):

155   [1] State ex rel. Nagle v Sullivan, 98 Mont 425, 40 P2d 995,  99 ALR 321; Jersey City v Hague,
156   18 NJ 584, 115 A2d 8.

157   [2] Georgia Dep't of Human Resources v Sistrunk, 249 Ga 543, 291 SE2d 524.  A public official
158   is held in public trust. Madlener v Finley (1st Dist) 161 Ill App 3d 796, 113 Ill Dec 712, 515
159   NE2d 697, app gr 117 Ill Dec 226, 520 NE2d 387 and revd on other grounds 128 Ill 2d 147, 131
160   Ill Dec 145, 538 NE2d 520.

161   [3] Chicago Park Dist. v Kenroy, Inc., 78 Ill 2d 555, 37 Ill Dec 291, 402 NE2d 181, appeal after
162   remand (1st Dist) 107 Ill App 3d 222, 63 Ill Dec 134, 437 NE2d 783.

163   [4] United States v Holzer (CA7 Ill) 816 F2d 304  and vacated, remanded on other grounds  484
164   US 807,  98 L Ed 2d 18,  108 S Ct 53, on remand (CA7 Ill) 840 F2d 1343, cert den  486 US
165   1035,  100 L Ed 2d 608,  108 S Ct 2022 and (criticized on other grounds by United States v
166   Osser (CA3 Pa) 864 F2d 1056) and (superseded by statute on other grounds as stated in United
167   States v Little (CA5 Miss) 889 F2d 1367) and (among conflicting authorities on other grounds
168   noted in United States v Boylan (CA1 Mass) 898 F2d 230, 29 Fed Rules Evid Serv 1223).

169   [5] Chicago ex rel. Cohen v Keane, 64 Ill 2d 559, 2 Ill Dec 285, 357 NE2d 452, later proceeding
170   (1st Dist) 105 Ill App 3d 298, 61 Ill Dec 172, 434 NE2d 325.

171   [6] Indiana State Ethics Comm'n v Nelson (Ind App) 656 NE2d 1172, reh gr (Ind App) 659
172   NE2d 260, reh den (Jan 24, 1996) and transfer den (May 28, 1996).

173   Errors and omissions are consistent with intent. Use of this format in no way grants jurisdiction to the
174   State of Oregon or the Beaverton Municipal Court

      Administrative & Judicial Notice to Dismiss-UC794581-and return $2000.00 bail
175

RECEIVED

JAN 23

City Attorney's Office

VA Portland Health Care System
3710 SW US Veterans Hospital Road
Portland, OR 97239

RECEIVED

JAN 2 3 2017

Beaverton Municipa

Date: JAN 20, 2017

TO WHOM IT CONCERNS:

REGARDING : RONALD C VROOMAN, BEAVERTON, OR  97005

Mr. Vrooman requested a letter from me to request humanitarian treatment
regarding his upcoming sentencing.

I am Mr. Vrooman's primary care physician.

Mr. Vrooman is a 78 year old man who receives medical care for the following
issues:
Hypertension, Orthostatic Hypotension & history of syncope
Wandering atrial pacemaker
Melanoma in situ of back Actinic Keratosis
SENSORNEUR Hearing Loss BILAT
Constipation- slow transit
Decreased vitamin D
Sleep Disturbance- Mild Obstructive Sleep apnea
OSTEOARTHROSIS: Back Pain, foot pain (hallux rigidus),CARPAL TUNNEL SYNDROME
Chronic Headache
Gastroesophageal Reflux Disorder
Raynaud's phenomenon
Gout
BRONCHITIS
ALLERGIC RHINITIS
MALIGN NEOPL PROSTATE s/p total prostatectomy w/Urinary Incontinence
Transitional cell carcinoma of the bladder

For his chronic pain syndrome, Mr. Vrooman follows a complex regimen of
exercises, heat treatment (including heating pad and hot bath), topical
therapies and splints. He uses crutches and a cane as needed for pain.

Mr. Vrooman takes the following prescription and non-prescription
medications:
 1) Amlodipine besylate 2.5mg tab take three tablets by mouth every day for
blood pressure for hypertension
 2) Camphor/menthol/methyl salicylate patch apply 2 patches topically to
affected area twice a day as  needed for pain. remove patch within 8 hours.
 3) Drip collector manhood pouch #4200b use guard item twice a day as needed
 4) Fluticasone prop 50mcg 120d nasal inhl inhale 2  sprays in each nostril
every day
 5) Hctz 25/triamterene 37.5mg tab take one-half tablet (12.5/18.75 mg) by
mouth every day
 6) Hydrocodone 7.5/acetaminophen 325mg tab by mouth every 4 hours as needed
for pain
 7) Losartan potassium 100mg tab take one-half tablet by mouth every 12 hours
 8) Menthol/m-salicylate 10-15% top cream apply thin film topically to
affected area three times a day as needed for pain
10) Selenium sulfide 2.5% lotion/shampoo apply with capful topically to
affected area weekly

RECEIVED

JAN 2 3 7

City Attorney's Office

11) Vitamin d 1000 unit tab take two tablets by mouth every day

active non-va medications
=============================================================
1) Non-va incont liner attends guards guard item twice a  day
2) Non-va multivitamin liquid,oral  mouth
3) Milk of Magnesia 2 tablespoons daily to maintain BM
4) bid dental care with Floss picks, intra dental brushes, oral analgesic
(benzocaine 20%)gel
5) nasal relief spray  oxymetazoline0.05% at bedtime and prn congestion.

Mr. Vrooman feels the complexity of his regimens to manage sleep, pain and
function means that care in a jail will lead to exacerbation of these issues
and of his medical problems. Please consider this when arriving at a
sentence.

Respectfully,

Sarah Goodlin MD
Chief, Geriatrics Section

Ronald C Vrooman
1-21-17

OFFICIAL SEAL
MELISSA MAE STUDINGER
NOTARY PUBLIC - OREGON
COMMISSION NO. 941448
MY COMMISSION EXPIRES AUG. 16, 2019

MMSt 1/23/17

*Copy of one*
*Filed into court*
*Records. Not*
*SCANNED* *PW*

**To: Beaverton Municipal Court their # 7945181**

From: Ronald Charles Vrooman

*7/27/17*

**131.035 When departures, errors or mistakes in pleadings or proceedings are material.** No departure from the form or mode prescribed by law, error or mistake in any criminal pleading, action or proceeding renders it invalid, unless it has prejudiced the defendant in respect to a substantial right. [1973 c.836 §4]

*Proof of Service*
*AVAILable*

I do lawful not legal. This is my best effort.

Ronald Charles Vrooman as Private Attorney Generals by the United States Congress lawfully authorized by the legislation of 42 U.S.C.1988 and also 18 U.S.C.1510 and 18 U.S.C. 1512 and to be known as "One of the People" also "Qualified Criminal Investigator" and "Federal Witness" and by unrebutted affidavit

Notice:

There will be a hearing on demurrer prior to the trial on 1-12-2017 with witnesses. I will have an expert witness on the extent of jurisdiction under the vehicle code. Pursuant to ORS 135.640.

**135.315 Types of pleading.** The only pleadings on the part of the defendant are the demurrer and plea. [Formerly 135.430]

**135.630 Grounds of demurrer.** The defendant may demur to the accusatory instrument when it appears upon the face thereof:

(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

(2) If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743;

(3) That the accusatory instrument charges more than one offense not separately stated;

<u>**(4) That the facts stated do not constitute an offense;**</u>

(5) That the accusatory instrument contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action; or

(6) That the accusatory instrument is not definite and certain. [Amended by 1973 c.836 §184]

**135.640 When objections that are grounds for demurrer may be taken.** When the objections mentioned in ORS 135.630 appear upon the face of the accusatory instrument, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the accusatory instrument, or that the facts stated do not constitute an offense, may be taken at the trial, under the plea of not guilty and in arrest of judgment. [Amended by 1973 c.836 §185]

**174.100 Definitions.** As used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise:

(1) "Any other state" includes any state and the District of Columbia.    (2) "City" includes any incorporated village or town.    (3) "County court" includes board of county commissioners.    (4) "Husband and wife," "husband or wife," "husband" or "wife" means spouses or a spouse in a marriage.    (5) "May not" and "shall not" are equivalent expressions of an absolute prohibition.

(6) "Person" includes individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies.

(7) "Sexual orientation" means an individual's actual or perceived heterosexuality, homosexuality, bisexuality or gender identity, regardless of whether the individual's gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth.    (8) "State Treasury" includes those financial assets the lawful custody of which are vested in the State Treasurer and the office of the State Treasurer relating to the custody of those financial assets.    (9) "To" means "to and including" when used in a reference to a series of statute sections, subsections or paragraphs.

(10) "United States" includes territories, outlying possessions and the District of Columbia.    (11) "Violate" includes failure to comply. [Amended by 1953 c.145 §2; 1957 c.360 §1; 1963 c.213 §1; 1965 c.518 §1; 1967 c.409 §1; 1983 c.327 §1; 1993 c.73 §1; 1995 c.93 §30; 2001 c.671 §1; 2007 c.100 §1; 2015 c.629 §33]

**183.310** (8) "Person" means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency.

**183.310**(10) "Small business" means a corporation, partnership, sole proprietorship or other legal entity formed for the purpose of making a profit, which is independently owned and operated from all other businesses and which has 50 or fewer employees. [1957 c.717 §1; 1965 c.285 §78a; 1967 c.419 §32; 1969 c.80 §37a; 1971 c.734 §1; 1973 c.386 §4; 1973 c.621 §1a; 1977 c.374 §1; 1977 c.798 §1; 1979 c.593 §6; 1981 c.755 §1; 1987 c.320 §141; 1987 c.861 §1; 2003 c.75 §71; 2005 c.523 §8; 2007 c.288 §9] (8) "Person" means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency.

**153.039 Stop and detention for violation.** (1) An enforcement officer may not arrest, stop or detain a person for the commission of a violation except to the extent provided in this section and ORS 810.410.

(2) An enforcement officer may stop and detain any person if the officer has reasonable grounds to believe that the person has committed a violation. An enforcement officer may stop and detain any employee, agent or representative of a firm, corporation or other organization if the officer has reasonable grounds to believe that the firm, corporation or other organization has committed a violation.    (3) Except as provided in subsection (4) of this section, the period of detention may be only as long as is necessary to:    (a) Establish the identity of the person, firm, corporation or organization believed to have committed the violation;    (b) Conduct any investigation reasonably related to the violation; and    (c) Issue a citation for the violation. (4) The authority of an enforcement officer to stop and detain a person for a traffic violation as defined by ORS 801.557 is governed by ORS 810.410. [1999 c.1051 §10]

The below information proves that people are not defined.

**801.385 "Pedestrian."** "Pedestrian" means any person afoot or confined in a wheelchair. [1983 c.338 §69]

**801.387 "Person with a disability."** "Person with a disability" means:

(1) A person who has severely limited mobility because of paralysis or the loss of use of some or all of the person's legs or arms;    (2) A person who is affected by loss of vision or substantial loss of visual acuity or visual field beyond correction; or    (3) A person who has any other disability that prevents the person from walking without the use of an assistive device or that causes the person to be unable to walk more than 200 feet, including but not necessarily limited to:    (a) Chronic heart condition;    (b) Emphysema;    (c) Arthritis;    (d) Rheumatism; or    (e) Ulcerative colitis or related chronic bowel disorder. [Formerly 801.235]

**801.390 "Pole trailer."** "Pole trailer" means a trailer attached or secured to the towing vehicle and ordinarily used for transporting long or irregular loads capable generally of sustaining themselves as beams between the towing vehicle and the trailer. The definition in this section is based on design features and, except as otherwise provided in this section, does not prohibit a pole trailer from fitting into another category of trailer based on use. [1983 c.338 §70]

161.015

(5) "Person" means a human being and, where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality.

The U.S. Constitution defined "people" when they wrote, "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

People - :  a body of persons making up a assembly, race, tribe, or nation. - one of the people of Oregon is called an Oregonian

Filed into both federal courts on the Counter Claim in common law court of record.

Therefore: By statute I am <u>one of the people</u> and do not qualify as a person. I am not in the jurisdiction of this court.

# IN THE MUNICIPAL COURT OF THE CITY OF BEAVERTON
# WASHINGTON COUNTY, STATE OF OREGON

| STATE OF OREGON, | ) | | **JUDGMENT** |
|---|---|---|---|
| Plaintiff, | ) | | |
| | ) | CA No.: | 16-01047 |
| v. | ) | | |
| | ) | Case No.: | UC794518-1 |
| | ) | | |
| **VROOMAN, RONALD CHARLES,** | ) | City Attorney: | KEMPTON, TIM |
| Defendant. | ) | | |
| | | Defense Attorney: | |

It is hereby adjudged that the above-named defendant has been convicted of   FAIL TO DISPLAY OR POSSESS
OPERATORS LICENSE (794518-1)

## Charge : **FAIL TO DISPLAY OR POSSESS OPERATORS LICENSE (794518-1)**

### Imposition of sentence suspended

- Bench probation to the Court for a period of 36 months, ending 01/24/2020.
  Obey all General Conditions of Probation as listed later in this Judgment.
- Serve 20 days in jail, beginning at 01/24/2017 07:00 AM.
- Pay fine of $1,000.00.
- Pay Suspension Fee $15.00.
- Pay Warrant Fee $50.00.
- Pay Security Release Fee $300.00.
- Do not drive without valid license, insurance and within restrictions including no alcohol in vehicle.
- Apply security to the financial obligations.
- Not drive a vehicle, even with a valid driver's license, that is not properly registered, license plates and registration
  stickers.

### GENERAL CONDITIONS OF PROBATION
1 .  Pay supervision fee, fines, restitution, or other fees ordered by the Court.
2 .  Remain in the State of Oregon until written permission to leave is granted by the Court.
3 .  If physically able, find and maintain gainful full-time employment, approved schooling, or a full-time combination of
     both. Any waiver of this requirement must be based on a finding by the Court stating the reasons for the waiver.
4 .  Change neither employment nor residence without prior permission from the Court.
5 .  Obey all municipal, county, state, and federal laws.
6 .  Not possess weapons, firearms, or dangerous animals.
7 .  Not use or possess controlled substances except pursuant to a medical prescription.

**You will remain under the jurisdiction of the Court for the length of probation. Failure to comply with the
Conditions of Probation will result in futher action by the Court. The Court will enforce its order by issuing a
warrant for your arrest. You could be sentenced to the maximum term in jail if you fail to comply with your
probation. Any evaluation, counseling or testing ordered by the Court will be at your expense.**

### MONEY AWARD
It is adjudged that the defendant pay the following obligations, which shall be a money award. All statutory assessments
and fees applicable to each conviction are imposed and are to be added by the Clerk of the Court as a money award, unless
waived on this judgment. If bail/security posted, it shall be applied to the obligations below.

*Judgment Creditor: CITY OF BEAVERTON*          *Judgment Debtor: DEFENDANT*

Pay a total of $1,365.00 to be applied as follows:
- Pay a fine of $1,000.00.
- Pay Suspension Fee $15.00.
- Pay Warrant Fee $50.00.

ePrint

- Pay Security Release Fee  $300.00.

**Unless installment arrangements have been made with the Clerk's Office, all fines, fees, and assessments are due and owing at 5:00 PM on the date of this Judgment.**

IT IS SO ADJUDGED THIS 24th day of January, 2017

_John T. Mercer_
Signature of Judge
            John  Mercer
Name of Judge

Evidence for 3;17 cv 00138 KI

https://www.youtube.com/watch?v=TVooIVtYvnk

this video is followed by a transcript of the video Jurisdiction of the Federal Court. 37 pages of evidence to accompany the video.

This courthouse 740 must figure a way to provide  an Article III court with amendment 11 and amendment VII and inform me how to access it.

## Organization:

Federal Jurisdiction Video

1. U.S> District court has no jurisdiction
2. "Citizens"
3. Unwritten law
4. "statute"
5. Berkley - Common law and civil law traditions (unwritten v. codified)
6. "law of the land" enactments are statutes
7. constitution Article II. Supreme law of the land
8. "sovereign"
9. Koenig v. flynn
10. lauri v. United states
11. Deshaney v Winnebago city
12. Antique arts corp v. city of Torrance
13. McCarthy v. frost
14. Morgan v. county of Yuba
15. Expert Knowles
16. "allegiance" subject/citizen
17. Chisholm v. Georgia
18. Sick wo v hopkins
19. Perry v united states
20. American banana co v. united fruit co
21. Kawananokao v polyblank
22. Article I. S. 8, C 17
23. Article 4
24. Article 3, s. 3., c. 2.
25. What powers were given - delegated powers.
26. Websters etymology "Jurisdiction" (jurisdiction is in the people)
27. caha v. united states
28. Federalist papers no. 17 - alexander Hamilton
29. Requinquist - people in prison voluntarily
30. Scott v sanford
31. 28 USC
32. 26 USC 7701
33. 26 USC 3121
34. 5 USC 552a(2)
35. "Ejusdem generis"
36. Article 4. Sec. 3.
37. 26 USC 638 (1)
38. Surplus trading co. v. cook
39. Fort Leavenworth R cov. Lowe 114 US 525
40. Palmer v barrett
41. Arlington hotel co v. fant
42. Us v. Unzeuta
43. james v drago cont
44. california RTC 6017

45. Pollard's lessee v hagan
46. collins v Yosemite park co
47. mason co v tax commission
48. Adams v us
49. fed rues civ proc. rule 54 X. General provisions, rule 54. App and exceptions
50. Howard v commissioners
51. 41st congressional session 3, 1871 chapter LXII (62)
52. Act of June 11 1878, 20 stat 102 ch 180 section 1 amended by act of June 28 1935
    49 stat 430 ch 332 sec. 1 (title 1 sec. 102, District of Columbia code (1940))
53. wham v us.
54. Blazac v porto rico/puerto rico
55. Calif. CCP 1916
56. Calif CCP 418.10 failure is a waiver
57. Jenkins v. McKeithen
58. Allen v. Wright
59. Grace v American Centra Ins. Co
60. Mansfield c & S LMR co. v. swan
61. King Bridge co v. Toe county
62. McNutt v General Motors acceptance corp.
63. Worth v seldom
64. fw/pbs v city of Dallas
65. Sec. 23 of chap 95 1/2 Ill. rev. st. (1947) [Jones ill stats Ann 85.023]
66. rutherford v. Bentz
67. Cohens v virginia
68. Elliot v lessee of piersol
69. rule 17 plaintiff and defendant capacity, public officers "REAL PARTY"
70. Lujan v defenders of wildlife
71. allen v. Wright
72. bender v Williamsport area school dist.
73. national organization for women inc. v. Scheilder
74. people v sapp
75. people v Alvarez

## Blacks Law 4th.

LAW

LAW. That which is laid down, ordained, or established. A rule or method according to which
phenomena or actions co-exist or follow each other. That which must be obeyed and followed
by citizens, subject to sanctions or legal consequences, is a "law."

Koenig v. Flynn, 258 N.Y. 292, 179 N. E. 705.

In old English jurisprudence, "law" is used to signify an oath, or the privilege of being sworn; as in the, phrases "to wage one's law," "to lose one's law."

The term is also used in opposition to "fact." Thus questions of law are to be decided by the court, while it is the province of the jury to solve questions of fact.

The earliest notion of law was not an enumeration of a principle, but a judgment in a particular case. When pronounced in the early ages, by a king, it was assumed to be the result of direct divine inspiration. Afterwards came the notion of a custom which a judgment affirms, or punishes its breach. In the outset, however, the only authoritative statement of right and wrong is a judicial sentence rendered after the fact has occurred. It does not presuppose a law to have been violated, but is enacted for the first time by a higher form into the judge's mind at the moment of adjudication. Maine, Anc.Law, (Dwight's Ed.)

pp. xv, 5.

The word may mean or embrace:

Act of the Legislature deposited in office of Secretary of State, properly authenticated by presiding officers of the two houses, and approved by Governor, State ex rel.

Martin v. Zimmerman, 233 Wis. 16, 288 N.W. 454, 456; body of principles, standards and rules promulgated by government, State ex rel.

Conway v. Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 98.3, 986; city charter provision, Sykes v. City of Battle Creek, 288 Mich. 660, 286 N.W. 117, 118; command which obliges a person or persons and obliges generally to acts or forbearances of a class, Aust.Jur. ; constitution or constitutional provision, Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 39 N.E.2d 87, 109; Wickham v. Grand River Dam Authority, 189 Okl. 540, 118 P. 2d 640, 643; Board of Public Instruction for Bay County v. State ex rel. Barefoot, 145 Fla. 482, 199 So. 760, 762; Hudson v. Cummard, 44 Ariz. 7, 33 P.2d 591, 593; county ordinance, People v. Ziady, 8 Ca.1.2d 149, 64 P.2d 425, 430, 108 A.L.R. 1234; distinct and complete act of positive law; doctrine or procedure of the common law, from which equity is a departure; enrolled bill attested by presiding officers of two branches of General Assembly, Shannon v. Dean, 279 Ky. 279, 130 S.W.2d 812, 815; Executive Order concerning alienation of Indians' land, United States v. Gilbertson, C.C.A.Wis., 111 F.2d 978, 980; Federal Communications Commission's regulations, Columbia Broadcasting System v. United States, N.Y., 316 U.S. 407, 62 S.Ct. 1194, 1200, 1201, 86 L.Ed. 1563; Federal Home Loan Bank Board's rules, Community Federal Say. & Loan Ass'n of Independence, Mo. v. Fields, C.C.A.Mo., 128 F.2d 705, 707; Federal Trade Commission's rules, Krit- zik v. Federal Trade Commission, C.C.A.7, 125 F.2d 351, 352; general rule of human action, taking cognizance only of external acts, enforced by a determinate authority, which authority is human, and among human authorities is that which is paramount in a political society, Holl.Jur. 36; governmental direction, In re Baldwin Tp., Allegheny County Annexation, 305 Pa. 490, 158 A. 272; grant by Leg- islature, City of Los Angeles v. Pacific Land Corporation, 41 Cal.App.2d 223, 106 P.2d 242, 244; Industrial Commission's Rules, State ex rel. Koger v. Industrial Commission, Ohio App., 48 N.E.2d 114, 118; Interstate Commerce Com- mission's Regulations, Columbia Broadcasting System v. United States, N.Y., 316 U.S. 407, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563; judicial decisions, judgments or decrees, West v. American Telephone & Telegraph Co., Ohio, 311 U.S. 223, 61 S.Ct. 179, 18.3, 132 A.L.R. 956, 85 L.Ed. 139; Miller v. Huntington & Ohio Bridge Co., 123 W.Va. 320, 15 S.E.2d 687, 692; U. S. v. Pendergast, D.C.Mo., 35 F.Supp. 593, 599; Monteith Bros. Co. v. U. S., D.C.Ind., 48 F.Supp. 210, 211; law of the state, Plick v. Toye Bros. Auto & Taxi- cab Co., 169 La. 44, 124 So. 140, 141; legislation by initiative method, Opinion of the Justices, 309 Mass. 676, 35 N.E.2d 676,

680; local rules of decision, National Fruit Product Co. v. Dwinell-Wright Co., D.C.Mass., 47 F.Supp. 499, 502; long-established local custom which has the force of law, Dubois v. Hepburn, 10 Pet. 1, 9 L.Ed. 325. Bush v. Brenner, D.C.Minn., 29 F.2d 844. 845; municipal ordinance, Norfolk & W. Ry. Co. v. White, Va., 160 S.E. 218, 221; State v. Police Court of City of Deer Lodge, 86 Mont. 297, 283 P. 430, 433 (contra, Village of Brewster v. Hills, 128 Ohio St. 354, 191 N.E. 366; City of Cincinnati v. Cor- rell, 141 Ohio St. 535, 49 N.E.2d 412, 413) ; prescribed rules of action or conduct, In re Baldwin Tp., Allegheny County Annexation, 305 Pa. 490, 158 A. 272; U. S. Fidelity & Guaranty Co. v. Guenther, 281 U.S. 34, 50 S.Ct. 165, 166. 74 L.Ed. 683, 72 A.L.R. 1064; proclamation of Governor, Williams v. State, 146 Tex.Cr.R. 430, 176 S.W.2d 177. 184: regulations, In re Baldwin Tp., Allegheny County Annexation, 305 Pa. 490, 158 A. 272; resolution passed by Legislature and approved by Governor, City of Bangor v. Inhabitants of Etna, 140 Me. 85, 34 A.2d 205, 208; revised statutes, W. R. McCullough Life Ins. Co. v. Armstrong, Tex. Civ.App., 158 S.W.2d 585, 586; rule of administrative authority, Inman v. Sandvig, 170 Wash. 112, 15 P.2d 696. 698; rule of civil conduct commanding, what is right and p rohibiting what is wrong, Rich Hill Coal Co. v. Bashore, 334 Pa. 449. 7 A.2d 302, 312 ; Maner v. Dykes, 183 Ga. 118, 187 S.E. 699, 701; City of Bangor v. Inhabitants of Etna, 140 Me. 85, 34 A.2d 205, 208; rule of civil conduct pre- scribed by the supreme power in a state, 1 Steph.Comm. 25; Civ.Code Dak. § 2 (Comp.Laws N.D.1913, § 4327; Rev. Code ST..1919, § 1) ; Pol.Code Cal. § 4466; City of Bangor v. Inhabitants of Etna, 140 Me. 85, 34 A.2d 205. 208; rule of conduct prescribed by lawmaking power of state, Board of Education of Union Free School Dist. No. Six of Town of Greenburg h v. Town of Greenburgh, 277 N.Y. 193, 13 N.E.2d 768, 770; Maner v. Dykes, 183 Ga. 118, 187 S.E. 699, 701; rule prescribed by the sovereign power, Maner v.

Dykes, 183 Ga. 118, 187 S.E. 699, 701; rules of court. Department of Finance v. Sheldon, 381 Ill. 256, 44 N.E.2d 863, 864; Goldston v. Karukas, 180 Md. 232, 23 A.2d 691, 692; State ex rel. Conway v. Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 983, 986; rules of decision commonly accepted and acted upon by bar and inferior courts, West v. American Telephone & Telegraph Co., Ohio, 311 U.S. 223, 61 S.Ct. 179, 183, 132 A.L.R. 956, 85 L.Ed. 139; rules promulgated by government, State ex rel. Conway v. Superior Court within and for Greenlee County, 60 Ariz. 69, 131 P.2d 983, 986; science or system of principles or rules of human conduct; Secretary of the Treasury regulations, In re Deyo's Estate, 42 N.Y.S.2d 379, 386, 180 Misc. 32; solemn expressions of legislative will which generally relate to what passes in ordinary course of affairs, Civ.Code La. arts. 1, 2; statute laws as construed by highest courts of state, National City Bank v. National Sec. Co., C.C.A.Tenn., 58 F.2d 7, 9; statute or enactment of legislative body, Shute v. Frohmiller, 53 Ariz. 483, 90 P.2d 998, 1001; State v. Masnik, 123 N.J.L. 335, 8 A.2d 701, 704; State ex rel. McKittrick v. Missouri Public Service Commission, 252 Mo. 29, 175 S.W.2d 857, 861; United States law, U. S. v. Wagner, C.C.A.Cal., 93 F.2d 77, 79; War Department regulations, Standard Oil Co. of California v. Johnson, Cal., 316 U.S. 481, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611.

A concurrent or joint resolution of legislature is not "a law", Koenig v. Flynn, 179 N.E. 705, 707, 258 N.Y. 292; Ex parte Hague, 105 N.J.Eq. 134, 147 A. 220, 222; Ward v. State. 176 Okl. 368, 56 P.2d 136, 137; Scudder v. Smith, 331 Pa. 165, 200 A. 601, 604; a resolution of the house of representatives is not a "law", State ex rel. Todd v. Yelle, 7 Wash.2d 443, 110 P.2d 162, 165; an unconstitutional stat- ute is not a "law", John F. Jelke Co. v. Hill, 208 Wis. 650, 242 N.W. 576, 581; Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 So.2d 244, 248.

When a statute is passed in violation of law, that is, of the fundamental law or constitution of a state, it is the prerogative of courts to declare it void, or, in other words, to declare it not to be law. Burrill.

When the term "law" is used to denote enactments of the legislative power, it is frequently confined, especially by English writers, to permanent rules of civil conduct, as distinguished from other acts, such as a divorce act, an appropriation bill, an estates act.
Rep.Eng.St.L.Com.Mar. 1856.

1028

With reference to its origin, "law" is derived either from judicial precedents, from legislation, or from custom. Sweet.

As to the different kinds of law, or law regard- ed in its different aspects, see Absolute Law; Adjective Law; Administrative Law; Admiralty; Arms, Law of; Bankrupt Law; Canon Law; Case Law; Citations, Law of ; Civil Law; Commercial Law; Common Law; Constitutional Law; Criminal; Custom; Ecclesiastical Law; Enabling Statute; Equity; Evidence, Law of; Flag, Law of; Foreign Laws; Forest Law; International Law; Local Law; Maritime Law; Marque, Law of; Martial Law; Mercantile Law; Military Law; Moral Law; Municipal Law; Natural Law; Oleron, Laws of; Organic Law; Parliamentary
Law; Penal Laws; Personal Law; Positive Law; Private Law; Probate; Prospective Law; Public Law; Remedial Statute; Retrospective Law; Revenue Law; Road, Law of; Roman Law; Special Law; Staple, Law of; Statute; Substantive Law; Unwritten Law; War; Wisby, Laws of; Written Law.

For "facts" and "law" as distinguishable, see Fact.


STATUTE, n. An act of the legislature declaring, commanding, or prohibiting something; a particular law enacted and established by the will of the legislative department of government; the written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state. Federal Trust Co. v. East Hartford Fire Dist., C.C.A.Conn., 283 F. 95, 98; In re Van TasselFs Will, 119 Misc. 478, 196 N.Y.S. 491, 494; Washington v. Dowling, 92 Fla. 601, 109 So. 588, 591.
This word is used to designate the written law in contradistinction to the unwritten law. Foster v. Brown, 199 Ga. 444, 34 S.E.2d 530, 535. See Common Law.
Foreign and Civil Law
Any particular municipal law or usage, though resting for its authority on judicial decisions, or the practice of nations. 2 Kent, Comm. 456. The whole municipal law of a particular state, from whatever source arising. Story, Confl. Laws, § 12.
"Statute" also sometimes means a kind of bond or obligation of record, being an abbreviation for "statute merchant" or "statute staple." See in- f r a . For mandatory and directory statutes see "Mandatory" and "Directory."
General Affirmative statute. See Affirmative.
Criminal statute. An act of the Legislature as an organized body relating to crime or its punishment. Washington v. Dowling, 92 Fla. 601, 109 So. 588, 591,
STATUTE
Declaratory statute. See Declaratory. Enabling statute. See that title. Expository statute. See that title.
General statute. A statute relating to the whole community, or concerning all persons generally, as distinguished from a private or special statute. 1 Bl.Comm. 85, 86; 4 Coke 75a.
Local statute. See Local Law.
Negative statute. A statute expressed in negative terms; a statute which prohibits a thing from being done, or declares what shall not be done.
Penal statute. See Penal.
Perpetual statute. One which is to remain in force without limitation as to time; one which contains no provision for its repeal, abrogation, or expiration at any future time.

Personal statutes. In foreign and modern civil law. Those statutes which have principally for their object the person, and treat of property only incidentally. Story, Confl. Laws, § 13. A person- al statute, in this sense of the term, is a law, ordinance, regulation, or custom, the disposition of which affects the person and clothes him with a capacity or incapacity, which he does not change with every change of abode, but which, upon principles of justice and policy, he is assumed to car- ry with him wherever he goes. 2 Kent, Comm. 456. The term is also applied to statutes which, instead of 'being general, are confined in their operation to one, person or group of persons. Bank of Columbia v. Walker, 14 Lea (Tenn.) 308; Saul v. Creditors, 5 Mart. N.S. (La.) 591, 16 Am. Dec. 212.

Private statute. A statute which operates only upon particular persons, and private concerns. 1 Bl.Comm. 86. An act which relates to certain individuals, or to particular classes of men. Dwar.St. 629; State v. Chambers, 93 N.C. 600.

Public statute. A statute enacting a universal rule which regards the whole community, 'as distinguished from one which concerns only particular individuals and affects only their private rights. See Code Civ.Proc.Cal. § 1898.

Punitive statute. See that title.

Real statutes. In the civil law. Statutes which have principally for their object property, and which do not speak of persons, except in relation to property. Story, Confl. Laws, § 13; Saul v. His Creditors, 5 Mart. N.S. (La.) 582, 16 Am.Dec. 212.

Reference statutes. See that title.

Remedial statute. See Remedial.

Revised statutes. A body of statutes which have been revised, collected, arranged in order, and re-enacted as a whole; this is the legal title

1581

## STATUTE

of the collections of compiled laws of several of the states and also of the United States.

Special statute. One which operates only upon particular persons and private concerns. 1 Bl. Comm. 86. Distinguished from a general or public statute.

Statute fair. In English law. A fair at which laborers of both sexes stood and offered them- selves for hire; sometimes called also "Mop."

Statute-merchant. In English law. A security for a debt acknowledged to be due, entered into be- fore the chief magistrate of some trading town, pursuant to the statute 13 Edw. I. De Mercatoribus, by which not only the body of the debtor might be imprisoned, and his goods seized in satisfaction of the debt, but also his lands might be delivered to the creditor till out of the rents and profits of them the debt be satisfied. 2 Bl. Comm. 160. Now fallen into disuse. 1 Steph. Comm. 287. See Yates v. People, 6 Johns. (N.Y.) 404.

Statute of accumulations. In English law. The statute 39 & 40 Geo. III. c. 98, forbidding the ac- cumulation, beyond a certain period, of property settled by deed or will.

Statute of allegiance de facto. An act of 11 Hen. VII. c. 1, requiring subjects to give their allegiance to the actual king for the time being, and protecting them in so doing.

Statute of distributions. See Distribution.

Statute of Elizabeth. In English law. The statute 13 Eliz. c. 5, against conveyances made in fraud of creditors.

Statute of frauds. See Frauds, Statute of.

Statute of Gloucester. In English law. The statute 6 Edw. I. c. 1, A.D. 1278. It takes its name from the place of its enactment, and was the first statute giving costs in actions. 3 Bl.Comm. 399.

Statute of laborers. See Laborer. Statute of limitations. See Limitation. Statute of uses. See Use.

Statute of wills. In English law. The statute 32 Hen. VIII. c. 1, which enacted that all persons being seised in fee-simple (except femes covert, infants, idiots, and persons of non-sane memory might, by will and testament in writing, devise to any other person, except to bodies corporate, two- thirds of their lands, tenements, and hereditaments, held in chivalry, and the whole of those held in socage. 2 Bl.Comm. 375.

Statute roll. A roll upon which an English statute, after receiving the royal assent, was formerly entered.

Statute staple. See Staple.

Statutes at large. Statutes printed in full and in the order of their enactment, in a collected form, as distinguished from any digest, revision, abridgement, or compilation of them. Thus the volumes of "United States Statutes at Large," contain all the acts of congress in their order. The name is also given to an authentic collection of the various statutes which have been pass- ed by the British parliament from very early times to the present day.

Statutes of amendments and jeofailes. Statutes whereby a pleader who perceives any slip in the form of his proceedings, and acknowledges the error (jeofaile), is permitted to amend. State ex rel. Smith v. Trimble, 315 Mo. 166, 285 S.W. 729, 731.

Temporary statute. One which is limited in its duration at the time of its enactment. It continues in force until the time of its limitation has expired, unless sooner repealed. A statute which by reason of its nature has only a single and temporary operation—e. g. an appropriation bill—is also called a temporary statute.

Validating statute. See that title.

STATUTE, v. In old Scotch law. To ordain, establish, or decree.

STATUTES IN DEROGATION OF COMMON LAW MUST BE STRICTLY CONSTRUED. Cooley, Const. Lim. 75, note; Arthurs, Appeal of, 1 Grant Cas. (Pa.) 57.


LAW OF THE LAND. Due process of law (q. v.). By the law of the land is most clearly intended the general law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. Dupuy v. Tedora, 204 La. 560, 15 So.2d 886, 891. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of general rules which govern society. Rich Hill Coal Co. v. Brashore, 334 Pa. 449, 7 A.2d 302, 316; In re Stobie's Estate, 30 Cal.App.2d 525, 86 P.2d 883, 885.

Everything which may pass under the form of an enactment is not the law of the land. Sedg.St. & Const.Law, (2d Ed.) 475. When first used in Magna Charta, the phrase probably meant the established law of the kingdom, in opposition to the civil or Roman law. It is now generally regarded as meaning general public laws binding on all members of the community. Janes v. Reynolds, 2 Tex. 251; Beasley v. Cunningham, 171 Tenn. 334, 103 S.W.2d 18, 20, 110 A.L.R. 306. It means due process of law warranted by the constitution, by the common law adopted by the constitution, or by statutes passed in pursuance of the constitution. Mayo v. Wilson, 1 N.H. 53.


SOVEREIGN. A person, body, or state in which independent and supreme authority is vested; a chief ruler with supreme power; a king or other ruler with limited power.
In English law. A gold coin of Great Britain, of the value of a pound sterling.

ALLEGIANCE. Obligation of fidelity and obedience to government in consideration for protection that government gives. U. S. v. Kuhn, D.C.N.Y., 49 F.Supp. 407, 414.

The citizen or subject owes an absolute and permanent allegiance to his government or sovereign until he becomes a citizen or subject of another government or another sovereign. The alien owes a local and temporary allegiance during period of his residence. U. S. v. Wong Kim, Ark., 169 U.S. 649, 18 Sup.Ct. 456, 42 L.Ed. 890.

"The tie or ligamen which binds the subject [or citizen] to the king [or government] in return for that protection which the king [or government] affords the subject, [or citizen."] 1 Bl.Comm. 366. It consists in "a true and faithful obedience of the subject due to his sovereign," 7 Coke, 4b, and is a comparatively modern corruption of ligeance (ligeantia), which is derived from liege (ligius), meaning absolute or unqualified. It signified originally liege fealty, 1. e. absolute and unqualified fealty. 18 L. Q. Rev. 47.

In Norman French, alleviation; relief ; redress. Kelham.

Acquired allegiance, is that binding a naturalized citizen.

Local or actual allegiance, is that measure of obedience due from a subject of one government to another government, within whose territory he is temporarily resident. From this are excepted foreign sovereigns and their representatives, naval

ALLIANCE

and armed forces when permitted to remain in or pass through the country or its waters.

Natural allegiance. In English law, that kind of allegiance which is due from all men born with- in the king's dominions, immediately upon their birth, which is intrinsic and perpetual, and- cannot be divested by any act of their own. 1 Bl.Comm. 369; 2 Kent, Comm. 42. In American law, the allegiance due from citizens of the United States to their native country, and also from naturalized citizens, and which cannot be renounced without the permission of government, to be declared by law. 2 Kent, Comm. 43-49.

It is said to be due to the king in his political, not his personal, capacity; L. R. 17 Q. B. D. 54, quoted in U. S. v. Wong Kim, Ark., 169 U.S. 663, 18 Sup.Ct. 456, 42 L.Ed. 890; and so in the United States "it is a political obligation" depending not on ownership of land, but on the enjoyment of the protection of government; Wallace v. Harmstad, 44 Pa. 492; and it "binds the citizen to the observance of all laws" of his own sovereign; Adams v. People, 1 N.Y. 173.

CITIZEN. A member of a free city or jural society, (civitas,) possessing all the rights and privileges which can be enjoyed by any person under its constitution and government, and subject to the corresponding duties. "Citizens" are members of community inspired to common goal, who, in associated relations, submit themselves to rules of conduct for the promotion of general welfare and conservation of individual as well as collective rights. In re McIntosh, D.C.Wash., 12 F. Supp. 177.

The term appears to have been used in the Roman government to designate a person who had the freedom of the city, and the right to exercise all political and civil privileges of the government. There was also, at Rome, a partial citizenship, including civil, but not political rights. Complete citizenship embraced both. Thomasson v. State, 15 Ind. 451; 17 L.Q.Rev. 270; 1 Sel.Essays in Anglo-Amer. L.H. 578.

A member of a nation or body politic of the sovereign state or political society who owes allegiance, Luria v. U. S., 34 S.Ct. 10, 19, 231 U.S. 9, 58 L.Ed. 101; U. S. v. Polzin, D.C.Md., 48 F.Supp. 476, 479.

A member of the civil state entitled to all its privileges. Cooley, Const.Lim. 77. One of the sovereign people. A constituent member of the sovereignty synonymous with the people. Scott v. Sandford, 19 How. 404, 15 L.Ed. 691.

In American Law

One who, under the constitution and laws of the United States, or of a particular state, is a mem- ber of the political community, owing allegiance and being entitled to the enjoyment of full civil rights. Amy v. Smith, 1 Litt. (Ky.) 331; Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the Unit- ed States and of the state wherein they reside. Amend. XIV, Const.U.S.; Nyman v. Erickson, 100 Wash. 149, 170 P. 546, 547.

The term may include or apply to an elector qualified to vote in an election, Belmont v. Town of Gulfport, 97 Fla. 688, 122 So. 10; children of alien parents born in United States, Von Schwerdtner v. Piper, D.C.Md., 23 F.2d 862, 863; U. S. v. Minoru Yasui, D.C.Or., 48 F.Supp. 40, 54; children of American citizens born outside United States, Hoaland v. Attorney General of United States, D.C.Md., 42 F.Supp. 13, 22; Indians, United States v. Hester, C.C.A. Okl., 137 F. 2d 145, 147; State v. McAlhaney, 220 N.C. 387, 17 S.E.2d 352, 354; national banks, American Surety Co. v. Bank of California, C.C.A.Or., 133 F.2d 160, 162; Ezzell v. First Nat. Banks, 218 Ala. 462, 119 So. 2, 3; negroes and whites, United States v. Ellis, D.C.S.C., 43 F.Supp. 321, 324; nonresident who has qualified as administratrix of estate of deceased resident, Williams' Code Tenn. § 8236. Hunt v. Noll, C.C.A.Tenn., 112 F.2d 288, 289; persons en- titled to privileges and immunities conferred upon same terms upon which they are conferred upon other citizens, Austin v. United States, D.C.I11., 40 F.Supp. 777, 778.

The terms "citizen" and "citizenship" are distinguish- able from "resident" or "inhabitant." Jeffcott v. Donovan, C.C.A.Ariz., 135 F.2d 213, 214; and from "domicile," Wheeler v. Burgess, 263 Ky. 693, 93 S.W.2d 351, 354; First Carolinas Joint Stock Land Bank. of Columbia v. New York Title & Mortgage Co., D.C.S.C., 59 F.2d 350, 351. The words "citizen" and "citizenship," however, usually

Petrowsky, C.C.A.N.Y., 250 F. 554, 557; citizen inhabitant and resident often synonymous, Jonesboro Trust Co. v. Nutt, 118 Ark. 368, 176 S.W. 322, 324; Edgewater Realty Co. v, Tennessee Coal, Iron & Railroad Co., D.C.Md., 49 F. Supp. 807, 809; and citizenship and domicile are often synonymous. Messick v. Southern Pa. Bus Co., D.C.Pa., 59 F. Supp. 799, 800.

A corporation is a citizen of state under whose laws it Is created and a nonresident of every other state. Jack- son Securities & Investment Co. v. State, 241 Ala. 288, 2 So.2d 760, 764. It is not a citizen within meaning of federal constitution declaring citizens of each state entitled to privileges and immunities of citizens in the several states or within Fourteenth Amendment prohibiting states from abridging privileges and immunities of citizens of United States, J. D. L. Corporation v. Bruckman, 11 N.Y. S.2d 741, 746, 171 Misc. 3; but see In re Thermiodyne Radio Corporation, D.C.Del., 26 F.2d 713, 714; nor within statute authorizing citizens of United States to prosecute appeal to Circuit Court of Appeals without prepaying costs or giving security, Atlantic S. S. Corporation v. Kelley, C.C.A.Fla., 79 F.2d 339, 340; nor within statute authorizing permission to citizens to sue in forma pauperis, Quittner v. Motion Picture Producers & Distributors of America, C.C.A.2, 70 F.2d 331, 332; nor within statute requiring suit in district wherein either plaintiff or defendant resides. Standard Stoker Co. v. Lower, D.C.Md., 46 F.2d 678. 684; Sutherland v. U. S., C.C.A.Neb., 74 F.2d 89, 92. Insurance companies, incorporated under state law. are "citizens of this state" within statute requiring foreign insurance companies to file bonds for payment of their obligations to such citizens. Republic Ins. Co. v. Cunningham, Tex.Civ.App., 62 S.W.2d 339, 343. The term "citizen" will not be construed to include a corporation, unless the general purpose and import of the statutory or constitutional provision seems to require it. St. Louis & S. F. R. Co. v. State, 120 Ark. 182, 179 S. W. 342, 343, Ann.Cas. 1917C, 873; Jennings v. Idaho Ry., Light & Power Co., 26 Idaho, 703, 146 P. 101, 102, L.R.A. 1915D, 115, Ann.Cas.1916E, 359.

Neither a corporation nor a partnership is a citizen of the United States entitled to immunity from service of summons by substituted service, Western Mut. Fire Ins. Co. v. Lamson Bros. & Co., D.C.Iowa, 42 F.Supp. 1007, 1012.

Filipinos are not citizens of United States, De Cano v. State, 7 Wash.2d 613, 110 P.2d 627, 631; People v, Cordero, 50 Cal.App.2d 146, 122 P.2d 648, 649; but see holding that Filipinos are within provision of Neutrality Act defining "citizen" as including any individual owing allegiance to the United States. Suspine v. Compania Transatlantica Centroamericana, S. A., D.C.N.Y., 37 F.Supp. 268, 271.

A state cannot be a citizen. Query v. 206 Cases of Assort- ed Liquor, D.C.S.C., 49 F.Supp. 693, 695.

But a state and the federal government each has citizens of its own, and the same person may be at the same time a citizen of the United States and a citizen of a state. The government of the United States can neither grant nor secure to its citizens rights or privileges which are not ex- pressly or by implication placed under its jurisdiction. All that cannot be so granted or secured are left to the exclusive protection of the states. U. S. v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588.

With reference to the jurisdiction and power of federal courts and removal of actions a citizen of the District of Columbia is not a "citizen of a state", Neild v. District of Columbia, 110 F.2d 246, 249, 71 App.D.C. 306; Glaeser v. Acacia Mut. Life Ass'n, D.C.Cal., 55 F.Supp. 925, 926; a corporation is a citizen of the state where it is organized, and a foreign corporation does not become a citizen of an- other state where it is authorized to carry on business, Van Buren v. Connecticut Gen. Life Ins. Co., D.C.Mass., 42 F.Supp. 279, 280; a municipal subdivision, such as county, city, town, or school district, is a citizen, Siegel v. City of Detroit, Department of Street Railways, D.C.Mich., 52 F.Supp. 669; Pettibone v. Cook County, Minn., C.C.A. Minn., 120 F.2d 850, 852; a national bank is a citizen of state where it has its principal place of business, American Surety Co. of New York v. Bank of California, D.C.Or., 44 F.Supp. 81, 83; Atwood v. National Bank of Lima, C.C.A. Ohio, 115 F.2d 861, 862; a state is not a citizen, Board of Health of Township of Hillside v. Mundet Cork Corpora- tion, 126 N.J.Eq. 100, 8 A.2d 105, 106, 107; State of North Dakota v. National Milling & Cereal Co., C.C.A.N.D., 114
310
F.2d 777, 779; State Highway Commission of Wyoming v. Utah Const. Co., (Wyo.) 49 S.Ct. 104, 106, 278 U.S. 194, 73 L.Ed. 262; a turnpike commission is a citizen, Hunkiri- Conkey Const. Co. v. Pennsylvania Turnpike Commission, D.C.Pa., 34 F.Supp. 26, 28; an association is not a citizen, Rife v. Lumber Underwriters, C.C.A.Tenn., 204 F. 32, 35; Village Mills Co. v. Houston Oil Co. of Texas, Tex.Civ. App., 186 S.W. 785, 788; domicile and citizen are synonmous in federal courts, Earley v. Hershey Transit Co., D.C. Pa., 55 F.Supp. 981, 982; inhabitant, resident and citizen are synonymous, Standard Stoker Co. v. Lower, D.C.Md., 46 F.2d 678, 683.

In English Law

An inhabitant of a city. 1 Rolle, 138. The representative of a city, in parliament. 1 Bl.Comm. 174. The word "subject" is used to designate an inhabitant of the country, or one amenable to the laws of the nation.

CITIZENSHIP. The status of being a citizen (q. v.).

CIVIL ACTION

The German as well as the French cities are a creation of the Middle Ages; there was an organic connection with the Roman town-system. Schroder, Lehrbuch des Deutchen Rechtsgeschichte 588.

CITY COUNCIL. The name of a group of municipal officers constituting primarily a legislative and administrative body, but which is often charged with judicial or quasi judicial functions, as

when sitting on charges involving the removal of an officer for cause. Rutter v. Burke, 89 Vt. 14, 93 A. 842, 849.

CITY ELECTION. Any election in a city at which people of the city may vote, Wing v. Ryan, 6 N. Y.S.2d 825, 829, 255 App.Div. 163.

CITY OF LONDON COURT. A court having a local jurisdiction within the city of London. It is to all intents and purposes a county court, having the same jurisdiction and procedure.

CITY REAL ESTATE. Property owned and used for municipal purposes. McSweeney v. Bazinet, 55 N.Y.S.2d 558, 561, 269 App.Div. 213.

CITY WARRANT. A command of council to treasurer to pay amount. State v. McCarthy, 282 P. 1045, 1048, 86 Mont. 100.

CIUDADES. Sp. In Spanish law, cities; distinguished from towns (pueblos) and villages (villas.) Hart v. Burnett, 15 Cal. 537.

CIVIC. Pertaining to a city or citizen, or to citizenship. Cleveland Opera Co. v. Cleveland Civic Opera Ass'n, 22 Ohio App. 400, 154 N.E. 352, 353.

CIVIC ENTERPRISE. A project or undertaking in which citizens of a city co-operate to promote the common good and general welfare of the peo- ple of the city. James McCord Co. v. Citizens' Hotel Co., Tex.Civ.App., 287 S.W. 906, 908.

CIVIL. Originally, pertaining or appropriate to a member of a civitas or free political community; natural or proper to a citizen. Also, relating to the community, or to the policy and government of the citizens and subjects of a state.

The word is derived from the Latin civilis, a citizen. Byers v. Sun Savings Bank, 41 Okl. 728, 139 P. 948, 949, 52 L.R.A.,N.S., 320, Ann.Cas.1916D, 222. In law, it has var- ious significations. In contradistinction to barbarous or savage, it indicates a state of society reduced to order and regular government. In contradistinction to criminal, it indicates the private rights and remedies of men. It is also used in contradistinction to military, ecclesiastical, natural, or foreign. Story, Const. § 791; 1 Bla.Comm. 6, 125, 251; Montesquieu, Sp. of Laws, b. 1, c. 3; Rutherforth, Inst. b. 2, c. 2; id. c. 3; id. c. 8, p. 359; Heineccius, Elem. Jurisp.Nat. b. 2, ch. 6.

A prisoner's statutory obligation to pay for his keep and maintenance is civil. Auditor General v. Hall, 300 Mich. 215, 1 N.W.2d 516, 518, 139 A.L.R. 1022.

As to civil "Commotion," "Conspiracy," "Con- tempt," "Corporations," "Death," "Injury," "Lib- erty," "Obligation," "Officer," "Possession," "Rem- edy," "Rights," and "War," see those titles. See, also, the following titles beginning with "Civil."


SUBJECT. Constitutional Law

One that owes allegiance to a sovereign and is governed by his laws. The natives of Great Britain are subjects of the British government. Men in free governments are subjects as well as citizens; as citizens they enjoy rights and franchises; as subjects they are bound to obey the laws. Webster. The term is little used, in this sense, in countries enjoying a republican form of government. The Pizarro, 2 Wheat. 245, 4 L.Ed.

226; Swiss Nat. Ins. Co. v. Miller, 267 U.S. 42, 45 S.Ct. 213, 214, 69 L.Ed. 504.

Legislation

The matter of public or private concern for which law is enacted. State ex rel. Jensen v. Kelly, 65 S.D. 345, 274 N.W. 319, 323. Thing legis- lated about or matters on which Legislature operates to accomplish a definite object or objects reasonably related one to the other. Crouch v. Benet, 198 S.C. 185, 17 S.E.2d 320, 322. The mat- ter or thing forming the groundwork of the act. McCombs v. Dallas County, Tex.Civ.App., 136 S. W.2d 975, 982.

The constitutions of several of the states require that every act of the legislature shall relate to but one subject, which shall be expressed in the title of the statute. Ex parte Thomas, 113 Ala. 1,

21 So. 369; In re Mayer, 50 N.Y. 504; State v. County Treasurer, 4 S.C. 528; State v. Laun- dy, 103 Or. 443, 204 P. 958, 963; Roark v. Prideaux, Tex. Civ.App., 284 S.W. 624, 627; Hoyne v. Ling, 264 Ill. 506, 106 N.E. 349. But term "subject" within such constitution- al provisions is to be given a broad and extensive meaning so as to allow legislature full scope to include in one act all matters having a logical or natural connection. Shaw v. State, 76 Okl.Cr. 271, 134 P.2d 999, 1006; Jaffee v. State, 76 Okl.Cr. 95, 134 P.2d 1027, 1032.

Logic

That concerning which the affirmation in a proposition is made; the first word in a proposition. State v. Armstrong, 31 N.M. 220, 243 P. 333, 337.

Scotch Law

The thing which is the object of an agreement.

SUBJECT-MATTER. The subject, or matter presented for consideration; the thing in dispute; the right which one party claims as against the other, as the right to divorce; of ejectment; to recover money; to have foreclosure. Flower Hospital v. Hart, 178 Okl. 447, 62 P.2d 1248, 1252. Nature of cause of action, and of relief sought. Moffatt v. Cassimus, 238 Ala. 99, 190 So. 299, 300.

SUBJECT TO. Liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for. Ameri- can Mfg. Co. v. Commonwealth, 251 Mass. 329, 146 N.E. 801; Hannibal Trust Co. v. Elzea, 315 Mo.
485, 286 S.W. 371, 377; Allen v. Simmons, 97 W. Va. 318, 125 S.E. 86, 88; Middleton v. Findla, 25 Cal. 76; Manning v. Sams, 143 Ga. 205, 84 S.E. 451; Homan v. Employers Reinsurance Corporation, 345 Mo. 650, 136 S.W.2d 289, 302, 127 A.L.R. 163.

EJUSDEM GENERIS. Of the same kind, class, or nature.

In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U. S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69, 151 P.2d 1016, 1021. The rule, however, does not neces- sarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.

The maxim "ejusdem generis," is only an illustration of the broader maxim, "noscitur a sod's." State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100.

INCLUDE. (Lat. inclaudere, to shut in, keep within). To confine within, hold as in an inclo- sure, take in, attain, shut up, contain, inclose, comprise, comprehend, embrace, involve. Includ- ing may, according to context, express an en- largement and have the meaning of and or in ad- dition to, or merely specify a particular thing al- ready included within general words theretofore used. Miller v. Johnston, 173 N.C. 62, 91 S.E. 593. Prairie Oil and Gas Co. v. Motter, D.C.Kan., 1 F.Supp. 464, 468; Decorated Metal Mfg. Co. v. U. S., 12 Ct.Cust.App. 140; In re Sheppard's Es- tate, 179 N.Y.S. 409, 412, 189 App.Div. 370; Rose v. State, 184 S.W. 60, 61, 122 Ark. 509; United States ex rel. Lyons v. Hines, 103 F.2d 737, 740, 70 App.D.C. 36, 122 A.L.R. 674.
905

INCLUSIO

INCLUSIO UNIUS EST EXCLUSIO ALTERIUS. The inclusion of one is the exclusion of another. The certain designation of one person is an ab- solute exclusion of all others. n Coke, 58b; Bur- gin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325.

COURT. A space which is uncovered, but which may be partly or wholly inclosed by buildings or walls. Smith v. Martin, 95 Okl. 271, 219 P. 312, 313. When used in connection with a street, indicates a short street, blind alley, or open space like a short street inclosed by dwellings or other buildings facing thereon. City of Miami v. Saunders, 151 Fla. 699, 10 So.2d 326, 329.
Legislation
A legislative assembly. Parliament is called In the old books a court of the king, nobility, and commons assembled. Finch, Law, b. 4, c. 1, p. 233; Fleta, lib. 2, c. 2.
The application of the term—which originally denoted the place of assembling—to denote the assemblage, resembles the similar application of the Latin term curia, and is readily explained by the fact that the earlier courts were merely assemblages, in the court-yard of the baron or of the king himself, of those who were qualified and whose duty it was so to appear at stated times or upon summons. Traces of this usage and constitution of courts still remain in the courts baron, the various courts for the trial of Impeachments in England and the United States, and in the control exercised by the parliament of England and the legislatures of the various states of the United States over the organization of courts of justice, as constituted in modern times. This meaning of the word has also been retained in the titles of some deliberative bodies, such as the "general court" of Massachusetts, i. e., the legislature.
International Law
The person and suite of the sovereign; the place where the sovereign sojourns with his regal retinue, wherever that may be. The English government is spoken of in diplomacy as the court of St. James, because the palace of St. James is the official palace.
Practice
An organ of the government, belonging to the judicial department, whose function is the application of the laws to controversies brought before it and the public administration of justice. White County v. Gwin, 136 Ind. 562, 36 N.E. 237, 22 L.
R.A. 402; Bradley v. Town of Bloomfield, 85 N.J. Law, 506, 89 A. 1009.
The presence of a sufficient number of the members of such a body regularly convened in an authorized place at an appointed time, engaged in the full and regular performance of its functions. Brumley v. State, 20 Ark. 77; Wightman v. Kars- ner, 20 Ala. 446.
A body in the government to which the admin- istration of justice is delegated. A body organized to administer justice, and including both judge and jury. Houston Belt & Terminal Ry. Co. v. Lynch, Tex.Com.App., 221 S.W. 959, 960; People ex rel. Thaw v. Grifenhagen, Sup., 154 N.Y.S. 965, 970; Peterson v. Fargo-Moorhead St. Ry. Co., 37 N.D. 440, 164 N.W. 42, 49.
A tribunal officially assembled under authority of law at the appropriate time and place, for the administration of justice. In re Carter's Estate, 254 Pa. 518, 99 A. 58.
An agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in due course of law at times and places previously deter- mined by lawful authority. Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070.
An incorporeal, political being, composed of one or more judges, who sit at fixed times and places, attended by proper officers, pursuant to lawful authority, for the administration of justice. State v. Le Blond, 108 Ohio St. 126, 140 N.E. 510, 512. An organized body with defined powers, meeting at certain times and places for the hear- ing and decision of causes and other matters brought before it, and aided in this, its proper business, by Its proper officers, viz., attorneys and

counsel to present and manage the business, clerks to record and attest its acts and decisions, and ministerial officers to execute its com- mands, and secure due order in its proceedings. Ex parte Gardner, 22 Nev. 280, 39 P. 570; Hertzen v. Hertzen, 104 Or. 423, 208 P. 580, 582.

It is a passive forum for adjusting disputes and has no power to investigate facts or to initiate proceedings. Sale v. Railroad Commission, 15 Ca1.2d 612, 104 P.2d 38, 41.

The place where justice is judicially administer- ed. Co. Litt. 58a; 3 Bl. Comm. 23. Railroad Co. v. Harden, 113 Ga. 456, 38 S.E. 950; Croft v. Croft, 119 N.J.Eq. 468, 182 A. 853.

The judge, or the body of judges, presiding over a court.

The words "court" and "judge," or "judges," are frequently used in statutes as synonymous. When used with reference to orders made by the court or judges, they are to be so understood. State v. Caywood, 96 Iowa, 367, 65 N.W. 385; Sale v. Railroad Commission, 15 Ca1.2d 612, 104 P.2d 38, 41.

The word "court" is often employed in statutes other- wise than in its strict technical sense, and is applied to various tribunals not judicial in their character, State v. Howat, 107 Kan. 423, 191 P. 585, 589; for example, in New Jersey, the "court of pardons"; In re Court of Pardons, 97 N.J.Eq. 555, 129 A. 624, 625.

Classification

Courts may be classified and divided according to several methods, the following being the more usual:

Courts of record and courts not of record. The former being those whose acts and judicial proceedings are enrolled, or recorded, for a perpetual

COURT

425

COURT

memory and testimony, and which have power to fine or imprison for contempt. Error lies to their judgments, and they generally possess a seal. Courts not of record are those of inferior dignity, which have no power to fine or imprison, and in which the proceedings are not enrolled or record- ed. 3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal. 225; Erwin v. U. S., D.C.Ga.,

37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.

A "court of record" is a judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of common law, its acts and proceedings being enrolled for a perpetual memorial. Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex

parte Gladhill, 8 Metc., Mass., 171, per Shaw, C. J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689.

Courts may be at the same time of record for some pur- poses and not of record for others. Lester v. Redmond, 6 Hill, N.Y., 590; Ex parte Gladhill, 8 Metc., Mass., 168.

Superior and inferior courts. The former being courts of general original jurisdiction in the first instance, and which exercise a control or super- vision over a system of lower courts, either by appeal, error, or certiorari; the latter being courts of small or restricted jurisdiction, and subject to the review or correction of higher courts. Some- times the former term is used to denote a particular group or system of courts of high powers, and all others are called "inferior courts."

To constitute a court a superior court as to any class of actions, within the common-law meaning of that term, its jurisdiction of such actions must be unconditional, so that the only thing requisite to enable the court to take cognizance of them is the acquisition of jurisdiction of the persons of the parties. Simons v. De Bare, 4 Bosw., N.Y., 547.

An inferior court is a court whose judgments or decrees can be reviewed, on appeal or writ of error, by a higher tribunal, whether that tribunal be the circuit or supreme court. Nugent v. State, 18 Ala. 521.

Civil and criminal courts. The former being such as are established for the adjudication of controversies between subject and subject, or the ascertainment, enforcement, and redress of private

rights; the latter, such as are charged with the administration of the criminal laws, and the punishment of wrongs to the public.

Equity courts and law courts. The former be- ing such as possess the jurisdiction of a chancellor, apply the rules and principles of chancery law, and follow the procedure in equity; the latter, such as have no equitable powers, but administer justice according to the rules and practice of the common law.

As to the division of courts according to their jurisdiction, see Jurisdiction.

As to several names or kinds of courts not specifically described in the titles immediately fol- lowing, see Arches Court, Appellate, Circuit Courts, Consistory Courts, County, Customary Court-Baron, Ecclesiastical Courts, Federal Courts, Forest Courts, High Commission Court, Instance Court, Justice Court, Justiciary Court, Legislative Courts, Maritime Court, Mayor's Court,

Moot Court, Municipal Court, Orphans' Court, Po- lice Court, Prerogative Court, Prize Court, Pro- bate Court, Superior Courts, Supreme Court, and Surrogate's Court.

As to court-hand, court-house, court-lands, court rolls, courtyard, see those titles in their alphabetic- al order infra.

General

Court above, court below. In appellate practice, the "court above" is the one to which a cause is removed for review, whether by appeal, writ of error, or certiorari; while the "court below" is the one from which the case is removed. Going v. Schnell, 6 Ohio Dec. 933.

Court in bank. A meeting of all the judges of a court, usually for the purpose of hearing arguments on demurrers, points reserved, motions for new trial, etc., as distinguished from sessions of the same court presided over by a single judge or justice.

Court of competent jurisdiction. One having power and authority of law at the time of acting to do the particular act. Ex parte Plaistridge, 68 Okl. 256, 173 P. 646, 647.

One having jurisdiction under the state Constitution and laws to determine the question in controversy. Texas Employers' Ins. Ass'n v. Nunamaker, Tex.Civ.App., 267 S.W. 749, 751. A court for the administration of justice as established by the Constitution or statute. Bradley v. Town of Bloomfield, 85 N.J.Law, 506, 89 A. 1009.

Court of limited jurisdiction. When a court of general jurisdiction proceeds under a special statute, it is a "court of limited jurisdiction" for the purpose of that proceeding, and its jurisdiction must affirmatively appear. Osage Oil & Re- fining Co. v. Interstate Pipe Co., 124 Okl. 7, 253 P. 66, 71.

De facto court. One established, organized, and exercising its judicial functions under authority of a statute apparently valid, though such statute may be in fact unconstitutional and may be after- wards so adjudged; or a court established and acting under the authority of a de facto govern- ment. 1 Bl. Judgm. § 173; In re Manning, 139 U.S. 504, 11 S.Ct. 624, 35 L.Ed. 264; Gildemeister V. Lindsay, 212 Mich, 299, 180 N.W. 633, 635.

Full court. A session of a court, which is at- tended by all the judges or justices composing it. Spiritual courts. In English law. The ecclesi- astical courts, or courts Christian. See 3 Bl. Comm. 61.

————————————————————

BERKLEY LAW PAPER

THE COMMON LAW AND CIVIL LAW TRADITIONS

Most nations today follow one of two major legal traditions: common law or civil law. The common law tradition emerged in England during the Middle Ages and was applied within British colonies across continents. The civil law tradition developed in continental Europe at the same time and was applied in the colonies of European imperial powers such as Spain and Portugal. Civil law was also adopted in the nineteenth and twentieth centuries by countries formerly possessing distinctive legal traditions, such as Russia and Japan, that sought to reform their legal systems in order to gain economic and political power comparable to that of Western European nation-states.

To an American familiar with the terminology and process of our legal system, which is based on English common law, civil law systems can be unfamiliar and confusing. Even though England had many profound cultural ties to the rest of Europe in the Middle Ages, its legal tradition developed differently from that of the continent for a number of historical reasons, and one of the most fundamental ways in which they diverged was in the establishment of judicial decisions as the basis of common law and legislative decisions as the basis of civil law. Before looking at the history, let's examine briefly what this means.

Common law is generally uncodifed.  This means that there is no comprehensive compilation of legal rules and statutes. While common law does rely on some scattered statutes, which are legislative decisions, it is largely based on precedent, meaning the judicial decisions that have already been made in similar cases.  These precedents are maintained over time through the records of the courts as well as historically documented in collections of case law known as year- books and reports.  The precedents to be applied in the decision of each new case are determined by the presiding judge. As a result, judges have an enormous role in shaping American and British law. Common law functions as an adversarial system, a contest between two opposing parties before a judge who moderates. A jury of ordinary people without legal training decides on the facts of the case.  The judge then determines the appropriate sentence based on the jury's verdict.

Civil Law, in contrast, is codifed. Countries with civil law systems have comprehensive, continuously updated legal codes that specify all matters capable of being brought before a court, the applicable procedure, and the appropriate punishment for each offense. Such codes distinguish between different categories of law: substantive law establishes which acts are subject to criminal or civil prosecution, procedural law establishes how to determine whether a particular action constitutes a criminal act, and penal law establishes the appropriate penalty. In a civil law system, the judge's role is to establish the facts of the case and to apply the provisions of the applicable code. Though the judge often brings the formal charges, investigates the matter, and decides on the case, he or she works within a framework established by a comprehensive, codifed set of laws.  The judge's decision is consequently less crucial in shaping civil law than the decisions of legislators and legal scholars who draft and interpret the codes.

 The following sections explore the historical roots of these differences.

Historical Development of Civil Law

The term civil law derives from the Latin ius civile, the law applicable to all Roman cives or citizens. Its origins and model are to be found in the monumental compilation of Roman law commissioned by the Emperor Justinian in the sixth century CE. While this compilation was lost to the West within decades of its creation, it was rediscovered and made the basis for legal

instruction in eleventh-century Italy and in the sixteenth century came to be known as Corpus iuris civilis. Succeeding generations of legal scholars throughout Europe adapted the principles of ancient Roman law in the Corpus iuris civilis to contemporary needs. Medieval scholars of Catholic church law, or canon law, were also influenced by Roman law scholarship as they compiled existing religious legal sources into their own comprehensive system of law and governance for the Church, an institution central to medieval culture, politics, and higher learning. By the late Middle Ages, these two laws, civil and canon, were taught at most universities and formed the basis of a shared body of legal thought common to most of Europe. The birth and evolution of the medieval civil law tradition based on Roman law was thus integral to European legal development. It offered a store of legal principles and rules invested with the authority of ancient Rome and centuries of distinguished jurists, and it held out the possibility of a comprehensive legal code providing substantive and procedural law for all situations.

As civil law came into practice throughout Europe, the role of local custom as a source of law became increasingly important—particularly as growing European states sought to unify and organize their individual legal systems.  Throughout the early modern period, this desire generated scholarly attempts to systematize scattered, disparate legal provisions and local customary laws and bring them into harmony with rational principles of civil law and natural law. Emblematic of these attempts is the Dutch jurist Hugo Grotius' 1631 work, Introduction to Dutch Jurisprudence, which synthesized Roman law and Dutch customary law into a cohesive whole. In the eighteenth century, the reforming aspirations of Enlightenment rulers aligned with jurists' desire to rationalize the law to produce comprehensive, systematic legal codes including Austria's 1786 Code of Joseph II and Complete Civil Code of 1811, Prussia's Complete Territorial Code of 1794, and France's Civil Code (known as the Napoleonic Code) of 1804. Such codes, shaped by the Roman law tradition, are the models of today's civil law systems.

https://www.law.berkeley.edu/library/robbins/pdf/CommonLawCivilLawTraditions.pdf
———————————————————————-

Case Law

Matter of Koenig v. Flynn, 179 N.E. 705 (NY 1932)
New York Court of Appeals
**Filed:** February 9th, 1932
**Precedential Status:** Precedential
**Citations:** 179 N.E. 705, 258 N.Y. 292
**Docket Number:** Unknown
**Author:** Frederick E. Crane

(Briscoe v. Bank of Kentucky,36 U.S. 257; McPherson v. Blacker, 146 U.S. 1, pp. 36, 37; UnitedStates v. Sprague, 282 U.S. 716; Matter of Wendell v.Lavin, 246 N.Y. 115; People v. Tremaine, 252 N.Y. 27.) The wording of section 4, article I, very likely suggested that the action by the State Legislature under it should be in the form of a law. It was to be more than an assent by the people of the State to some Federal proposition and more than a choice by them of a Federal representative. The legislative act was to be a direction to the people of the State demanding certain things to be done, fixing a time, a place, and a manner which had to be followed. From the Legislature was to come a mandate, the disobedience of which would result in penalties or legal consequences. Naturally, this would be effected in the same way as all

other like mandates. **The action of the Legislature would, therefore, be in the form of a law. Section 4 says that the times, places and manner shall be "prescribed" by the Legislature. "Prescribed" means to lay down authoritatively a rule of action. From time immemorial this has been done** *Page 301* **by a law according to the forms existing at the time. That must be obeyed and followed by citizens subject to sanctions or legal consequences is a law. Such a direction must take the form of law.** Likewise, in section 4, we find that Congress may exercise the power given to the State Legislature, and when it makes its regulations, it shall do so "by law." The matter being dealt with in section 4 is the time, place and manner of holding elections for Representatives. Whether these details be fixed by the Legislature of the State or by Congress, they are to be fixed by law. If Congress must do it by law, it is reasonable to suppose that the State Legislature was intended to do it in the same way. This at least has been the interpretation given to this section for over one hundred and forty years, and it is too late now to overturn it.

There is a distinction to be drawn between the functions of a Legislature, such, for instance, as choosing Senators, making application to the Federal government for protection against invasion, ratifying a constitutional amendment, consenting to a purchase of State lands — there is, I say, a difference between these functions of the Legislature and the prescribing or enacting of a rule or direction, which must be followed and obeyed by the people of the State, called the law-making power; such, for instance, as dividing the State into congressional districts and directing the people where, when and how to vote. We find such a distinction referred to in *McPherson* v.*Blacker* (146 U.S. 1); *State ex rel. Davis* v. *Hildebrant* (241 U.S. 565); *Hawke* v. *Smith* (253 U.S. 221); *UnitedStates* v. *Sprague* (282 U.S. 716), although these cases did not pass upon the point here in question. (See, also, *Matter ofDoyle,* 257 N.Y. 244.) We conclude, therefore, that the resolution of April 10, 1931, was ineffective, and that its attempted redistricting of the State is null and void.

https://www.courtlistener.com/opinion/3621335/matter-of-koenig-v-flynn/?

**Luria v. United States**
**231 U.S. 9 (1913)**

**U.S. Supreme Court**
**Luria v. United States, 231 U.S. 9 (1913)**
Luria v. United States
No. 27
Argued April 23, 1913
Decided October 20, 1913
231 U.S. 9

*Syllabus*

**Citizenship is membership in a political society, and implies the reciprocal obligations as compensation for each other of a duty of allegiance on the part of the member and a duty of protection on the part of the society.**
Under the Constitution of the United States, a naturalized citizen stands on an equal footing with the native citizen in all respects save that of eligibility to the Presidency.
That which is contrary to the plain implication of a statute is unlawful,
for what is **clearly implied** is as much a part of a law as that which is expressed.

https://supreme.justia.com/cases/federal/us/231/9/

**DeShaney v. Winnebago Cty. DSS**

489 U.S. 189 (1989)

(a) A State's **failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause, because the Clause imposes no duty on the State to provide members of the general public with adequate protective services**. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security; while it forbids the State itself to deprive individuals of life, liberty, and property without due process of law, its language cannot fairly be read to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Pp. 489 U. S. 194-197.

https://supreme.justia.com/cases/federal/us/489/189/case.html

### Antique Arts Corp. v. City of Torrance (1974)

Initially it is obvious to us that the alleged 10-minute delay of the police dispatcher was not the causal or proximate cause of Siam's loss. The one and only cause was the robbery.

### McCarthy v. Frost (1973)
Annotate this Case

[Civ. No. 40918. Court of Appeals of California, Second Appellate District, Division Two. August 7, 1973.]
DOROTHY M. McCARTHY et al., Plaintiffs and Appellants, v. L. A. FROST et al., Defendants and Respondents
(Opinion by Fleming, J., with Roth, P. J., and Compton, J., concurring.) **[33 Cal. App. 3d 873]**

Defendants are highway patrolmen employed by the State of California. At 6 p.m. on 24 February 1969 **[33 Cal. App. 3d 874]** McCarthy was driving a 1966 Jaguar eastbound on Highway 101 near Sheffield Drive in Santa Barbara County. Then:"At all times and at such time and place defendants negligently and carelessly failed to discover William Joseph McCarthy, the decedent, and failed to search for him or his vehicle, failed to find him, failed to summon medical aid, failed to administer first aid, failed to remove him from his vehicle, prevented others from finding him and prevented others from rendering medical aid, and defendants so negligently and carelessly conducted themselves as to proximately cause the death of William Joseph McCarthy, deceased, as hereinabove alleged." As a result, plaintiffs suffered damages in excess of $1,000,000. fn. 1
On motion for judgment on the pleadings, as on general demurrer, the question is whether the complaint states a cause of action. (Maxon v. Security Ins. Co., 214 Cal. App. 2d 603, 610 [29 Cal. Rptr. 586].) fn. 2 **We agree with the trial court's conclusion that the complaint does not state a cause of action because it does not set forth a legal duty owed by defendants to decedent or plaintiffs.**

Morgan v. County of Yuba [Civ. No. 10636 Third Dist. Nov. 30 1964]

In this wrongful death action against the County of Yuba a demurrer was sustained without leave to amend and three of the plaintiffs, the minor children (and heirs) of decedent, appealed from the judgment of dismissal.
…t**he Sheriff and Deputies of the County of Yuba undertook to warn plaintiffs immediately upon said Ashby's release on bail. Said sheriff and deputies had full knowledge that said Ashby threatened the life of said ELIZABETH MORGAN." It is further alleged that the warning was not given and that as a proximate result thereof said decedent was killed by Ashby**.

By metaphysical refinement, in examining our form of government, it might be correctly said that **there is no such thing as a citizen of the United States.** But constant usage - arising from convenience, and perhaps necessity, and dating from the formation of the Confederacy - has given substantial existence to

the idea which the term conveys. A citizen of any one of the States of the Union, is held to be, and called a citizen of the United States, although technically and abstractly **there is no such thing**. To conceive a citizen of the United States who is not a citizen of some one of the states, is totally foreign to the idea, and inconsistent with the proper construction and common understanding of the expression as used in the constitution, which must be deduced from its various other provisions. The object then to be obtained, **by the exercise of the power of naturalization, was to make citizens of the respective states.** Ex parte Knowles, 5 Ca. 300, 302 (1855)


Chisholm V. Georgia 2. U.S. 419 (1793)
at the Revolution, the sovereignty devolved on the people, and they are truly the sovereigns of the country, but they are sovereigns without subjects (unless the African Page 2 U. S. 472
slaves among us may be so called), and have none to govern but themselves; the citizens of America are equal as fellow citizens, and as joint tenants in the sovereignty.

https://supreme.justia.com/cases/federal/us/2/419/case.html

Yick Wo V. Hopkins, 118 U.S. 356 (1886) U.S. Supreme Court

A municipal ordinance to regulate the carrying on of public laundries within the limits of the municipality violates the provisions of the Constitution of the United States if it confers upon the municipal authorities arbitrary power, at their own will, and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places, without regard to the competency of the persons applying, or the propriety of the place selected, for the carrying on of the business.

Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but, in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision, and in many cases of mere administration, the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth "may be a government of laws, and not of men." For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.

https://supreme.justia.com/cases/federal/us/118/356/case.html

Perry v. United States, 294, U.S. 330 (1935)

The sovereignty of the United States resides in the people, and Congress cannot invoke the sovereignty of the people to override their will as declared in the Constitution. P. 294 U. S. 353.

https://supreme.justia.com/cases/federal/us/294/330/case.html

American Banana Co. V. United Fruit Co., 29 S. Ct. 511, 213 U.S. 347, 53 L.Ed. 826, 19 Ann Cas. 1047.

Law is a statement of the circumstances, in which the public force will be brought to bear upon men through the courts. But the word commonly is confined to such prophecies or threats when addressed to persons living within the power of [213 U.S. 347, 357]  the courts.

In the case of private persons, it consistently may assert the freedom of the immediate parties to an injury and yet declare that certain persuasions addressed to them are wrong.

The foregoing considerations would lead, in case of doubt, to a construction of any statute as intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. 'All legislation is prima facie territorial.' Ex parte Blain, L. R. 12 Ch. Div. 522, 528; State v. Carter, 27 N. J. L. 499; People v. Merrill, 2 Park. Crim. Rep. 590, 596. Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only everyone subject to such legislation, not all that the legislator subsequently may be able to catch.

https://supreme.justia.com/cases/federal/us/294/330/case.html

Ruling Case Law, As developed and Established by the Decisions and Annotations Contained in (named books and reports) Volume 5. 1914.
NOTE. 8. Eng. Rul. Cas. 11. A conspiracy in the United States to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law. American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S. Ct. 511, 53 U.S. (L. ed.) 826, 16 Ann Cas. 1047.

Kawananokoa v. Polyblank 205 U.S. 349, (1907)

A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. "Car on peut bien recevoir loy d'autruy, mais il est impossible par nature de se donner loy." Bodin, Republique, 1, c.8.Ed. 1629, p. 132. Sir John Eliot, De Jute Maiestatis, c. 3. Nemo suo statute ligatur necessitative. Baldus, De Leg. et Const., Digna Vox (2d ed., 1496, fol.

Caha v. United States, 52 U.S. 211 (1894)
This statute is one of universal application within the territorial limits of the United States, and is not limited to those portions which are within the exclusive jurisdiction of the national government, such as the District of Columbia. Generally speaking, within any state of this union, the preservation of the peace and the

protection of person and property are the functions of the state government, and are no part of the primary duty, at least, of the nation. The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia and other places that are within the exclusive jurisdiction of the national government. It was in reference to such body of laws that § 2145, Rev.Stat., was enacted, and the argument which is sought to be drawn by the counsel therefrom against the jurisdiction of the District Court of Kansas has no foundation.It is enough that § 5392 has uniform application throughout the territorial limits of the

Page 152 U. S. 216

United States; that by § 563, the district courts are given jurisdiction generally "of all crimes and offences cognizable under the authority of the United States committed within their respective districts," and that, by the Act of January 6, 1883, c. 13, § 2, 22 Stat. 400, the territory in question was annexed to and made a part of the United States Judicial District of Kansas.

## Scott v. Sanford 6 U.S.

The clause in the Constitution authorizing Congress to make all needful rules and regulations for the government of the territory and other property of the United States applies only to territory within the chartered limits of some one of the States when they were colonies of Great Britain, and which was surrendered by the British Government to the old Confederation of the States in the treaty of peace. It does not apply to territory acquired by the present Federal Government by treaty or conquest from a foreign nation.

When the Constitution was adopted, they were not regarded in any of the States as members of the community which constituted the State, and were not numbered among its "people or citizens." Consequently, the special rights and immunities guarantied to citizens do not apply to them. And not being "citizens" within the meaning of the Constitution, they are not entitled to sue in that character in a court of the United States, and the Circuit Court has not jurisdiction in such a suit.

## Fort Leavenworth R. Co. V. Lowe, 114, U.S. 525

The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made. The United States, therefore, retained, after the admission of the State, only the rights of an ordinary proprietor; except as an instrument for the execution of the powers of the general government, that part of the tract, which was actually used for a **fort** or military post, was beyond such control of the State, by taxation or otherwise, as would defeat its use for those purposes. So far as the land constituting the Reservation was not used for military purposes, the possession of the United States was only that of an individual proprietor. The State could have exercised, with reference to it, the same authority and jurisdiction which she could have

exercised over similar property held by private parties. This defect in the jurisdiction of the United States was called to the attention of the government in 1872. In April of that year the Secretary of War addressed a communication to the Attorney-General, enclosing papers touching the Reservation, and submitting for his official opinion the questions, whether, under the Constitution, the reservation of the land for a site as a military post and for public buildings took it out of the operation of the law of March 3, 1859, 11 Stat. 430, and, if so, what action would be required on the part of the Executive or Congress to restore the land to the exclusive jurisdiction of the United States. The Attorney-General replied that the act admitting Kansas as a State into the Union had the effect to withdraw from federal jurisdiction all the territory within the boundaries of the new State, excepting only that of the Indians having treaties with the United States, which provided that without their consent such territory should not be subject to State jurisdiction, and the Reservation was not within this exception; and that to restore the federal jurisdiction over the land included in the Reservation, it would be necessary to obtain from the State of Kansas a cession of jurisdiction, which he had no doubt would upon application be readily granted by the State Legislature. 14 Opin. Attorneys General, 33. It does not appear from the record before us that such application was ever made; but, on the 22d of February, 1875, the Legislature of the State passed an act entitled "An Act to cede jurisdiction to the United States over the territory of the **Fort Leavenworth** Military Reservation," the first section of which is as follows:

"That exclusive jurisdiction be, and the same is hereby ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation known as the **Fort Leavenworth** Reservation in said State, as declared from time to time by the President of the United States, saving, however, to the said State the right to serve civil or criminal process **within** said Reservation, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said State, but outside of said cession and Reservation; and saving further to said State the right to tax railroad, bridge, and other corporations, their franchises and property, on said Reservation." Laws of Kansas, 1875, p. 95.

The Constitution provides that "Congress shall have power to *exercise exclusive legislation in all cases whatsoever* over such district, (not exceeding ten miles square,) as may, by cession of particular States and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the Legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." Art. 1, sec. 8. The Attorney-General replied that the act admitting Kansas as a State into the Union had the effect to withdraw from federal jurisdiction all the territory within the boundaries of the new State, excepting only that of the Indians having treaties with the United States, which provided that without their consent such territory should not be subject to State jurisdiction, and the Reservation was not within this exception; and that to restore the federal jurisdiction over the land included in the Reservation, it would be necessary to obtain from the State of Kansas a cession of jurisdiction, which he had no doubt would upon application be readily granted by the State Legislature.

Clause 17 provides that Congress shall have power "to exercise exclusive legislation" over "all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."

"Exclusive legislation" is consistent only with exclusive jurisdiction.

Id., p. 281 U. S. 650. Clause 17 governs those cases where the United States acquires lands with the consent of the Legislature of the state for the purposes there described. If lands are otherwise acquired, and jurisdiction is ceded by the state to the United States, the terms of the cession, to the extent that they may lawfully be prescribed – that is, consistently with the carrying out of the purpose of the acquisition – determine the extent of the federal jurisdiction. Fort Leavenworth R. Co. v. Lowe, 114 U. S. 525, 114 U. S.

527, 114 U. S. 538-539; Palmer v. Barrett, 162 U. S. 399, 162 U. S. 402-403; Arlington Hotel Co. v. Fant, 278 U. S. 439, 278 U. S. 451; United States v. Unzeuta, 281 U. S. 138, 281 U. S. 142; Surplus Trading Company v. Cook, supra.

James v. Dravo Contracting Co. 302 U.S. 134 (1937)
A State has no power to tax in a place within the State over which the United States has acquired exclusive jurisdiction.

Pollard's Lessee v. Hagan, 44 U.S. 3 How. 212, 212(1845)
The United States never held any municipal sovereignty, jurisdiction, or right of soil in and to the territory of which Alabama, or any of the new States, were formed, except for temporary purposes, and to execute the trusts created by the acts of the Virginia and Georgia legislatures, and the deeds of cession executed by them to the United States, and the trust created by the treaty of the 30th April, 1803, with the French Republic ceding Louisiana.

Palmer V. Barrett, No. 194, Decided [1896]

Surplus Trading Co. v. Cook, Supra p. 652, 302 U.S. 142

Balzac v Puerto Rico, United States Supreme Court (1922) No. 178.
The United States District Court is not a true United States court established under article 3 of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under article 4, 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts, in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court.

http://caselaw.findlaw.com/us-supreme-court/258/298.html

McNutt, Governor of Indiana, Et. AL. v. General Motors Acceptance Corp. No. 709, Supreme Court of the United States.[1936]

Respondent invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference. *Hunt* v. *New York Cotton Exchange,* 205 U.S. 322; *Bitterman* v. *Louisville & Nashville R. Co.,* 207 U.S. 205; *Berryman* v. *Whitman College,* 222 U.S. 334; *Glenwood Light Co.* v. *Mutual Light Co.,* 239 U.S. 121; *Healy* v. *Ratta,* 292 U.S. 263.

Respondent contends that the burden of proving the lack of jurisdiction rests upon the party challenging the jurisdiction and cites decisions of this Court to that effect. The question is thus sharply presented.

182

182 The jurisdiction of the District Court in a civil suit of this nature is definitely limited by statute to one —

"where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens or subjects." Jud. Code, § 24 (1), 28 U.S.C. 41 (1).

The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations.

Here, the allegation in the bill of complaint as to jurisdictional amount was traversed by the answer. The court made no adequate finding upon that issue of fact, and the record contains no evidence to support the allegation of the bill. There was thus no showing that the District Court had jurisdiction and the bill should have been dismissed upon that ground.
The decree is reversed and the cause is remanded to the District Court with directions to dismiss the bill of complaint for the want of jurisdiction.

https://scholar.google.com/scholar_case?case=3115834678784700438&q=McNutt+v.+General+Motors+Acceptance+Corp.&hl=en&as_sdt=6,44&as_vis=1

---

Constitution

Article 1. Section 8. Clause 17.
To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of Particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;

Alexander Hamilton, Federalist Paper Number XVII.
*There is one transcendant advantage belonging to the province of the State governments, which alone suffices to place the matter in a clear and satisfactory light, -- I mean the ordinary administration of criminal and civil justice. This, of all others, is the most powerful, most universal, and most attractive source of popular obedience and attachment. It is that which, being the immediate and visible guardian of life and property, having its benefits and its terrors in constant activity before the public eye, regulating all those personal interests and familiar concerns to which the sensibility of individuals is more immediately awake, contributes, more*

*than any other circumstance, to impressing upon the minds of the people, affection, esteem, and reverence towards the government. This great cement of society, which will diffuse itself almost wholly through the channels of the particular governments, independent of all other causes of influence, would insure them so decided an empire over their respective citizens as to render them at all times a complete counterpoise, and, not unfrequently, dangerous rivals to the power of the Union.*

*http://www.constitution.org/fed/federa17.htm*

++++++++
Chief Justice Renquhist quote: "People are in prison voluntarily."
Most people convict themselves with their words. [a plea. personally i suggest a non plea but a statement of duress.]

Encyclopedia of Capital Punishment in the United States, 2d ed.
-Case Holding. The defendant's guilty pleas to capital offenses were constitutionally void because the trial record failed to disclose if the guilty pleas were made intelligently and voluntarily.
-Opinion of the Court of justice Douglas: Justice Douglas held that the Constitution required the record to reflect an affirmative showing that a guilty plea was intelligently and voluntarily made. It was said that this stringent requirement was necessary because several constitutional rights are involved when a plea of guilty is entered, including (1) the privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. Justice Douglas stated that relinquishment of these rights could not be presumed from a silent record. The opinion concluded that the defendant's guilty pleas constituted reversible error because the record did not disclose that the defendant voluntarily and understandingly entered his pleas of guilty. The judgment of the Alabama Supreme Court was reversed.
-Dissenting Opinion by Justice Harlan, in Which Black, J., Joined: Justice Harlan dissented from the Court's decision. He argued that the Court was wrong to constitutionalize the requirement that a trial record must reflect that a guilty plea was intelligently and voluntarily made. Justice Harlan wrote: "The Court...in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure." It was further contended that "the Court does all this at the behest of a [defendant] who has never at any time alleged that his guilty plea was involuntary or made without knowledge of the consequences." Justice Harlan concluded: "I would hold that... Boykin is not entitled to outright reversal of his conviction simply because of the 'inadequacy' of the record pertaining to his guilty plea. Further, I would not vacate the judgment below and remand for a state-court hearing on voluntariness. For even if it is assumed for the sake of argument that [the defendant] would be entitled to such a hearing if he had alleged that the plea was involuntary, a matter which I find it unnecessary to decide, the fact is that he has never made any such claim. Hence, I consider that [the defendant's] present arguments relating to his guilty plea entitle him to no federal relief."

Opinion of the Court by Chief Justice Fuller: The chief justice ruled that the defendant's confession was voluntary: "A confession, if freely and voluntarily made, is evidence of the most satisfactory character." The chief justice noted that "From the very nature of such evidence, it must be subjected to careful scrutiny, and received with great caution, a delibrate, voluntary confession of guilt is among the most effectual proofs in the law, and constitutes the strongest evidence against eh party making it that can be given of the facts stated in such confession." The opinion held that a confession is involuntary when "made tiger in consequence of inducement sof a temporal nature, held out by one in authority touching the charge preferred, or because of a threat or promise, by or in the presence of such person, which, operating upon the fears or hopes of the accused in reference to the charge, deprives him of that freedom of will or self-control essential to make his confession voluntary within the meaning of the law." The chief justice concluded: "Tested by these conditions, there seems to have been no reason to exclude the confession of the accused: for the existence' of any such inducements, threats, or promises seems to have been negatived by the statement of the circumstances under which it was made." The judgment of conviction and sentence to death were affirmed. See also. Right to Remain Silent.

Brandeis, Louis D. Louis D. Brandeis served as an associate justice of the United States Supreme Court from 1916 to 1939. While the Supreme Court, Brandeis was known as a progressive jurist who interpreted the Constitution in a manner that gave the greatest protection to individual freedoms from government encroachment.

In the case of Ziang v. United States, Brandeis was called upon to determine whether a defendant's confession and incriminating statements were obtained in violation of the constitution. The defendant in Ziang was interrogated by the police for thirteen days before being formally arrested and arraigned. During that period the police obtained a confession and incriminating statements which were used to convict the defendant of capital murder and obtain a sentence of death. Brandeis rejected the government's contention that the confession and incriminating statements were voluntary because of the absence of physical injury or threats. He wrote: "In the federal courts, the requisite of voluntariness is not satisfied by establishing merely that the confession was not induced by a promise or a threat. A confession is voluntary in law if, and only if, it was, in fact, voluntarily made. A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them. But a confession obtained by compulsion must be exceeded whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise." Brandeis granted the defendant a new trial. On October 5, 1941, Brandeis died.

Pleas Under Federal Rules.
d. Insuring that the Plea is Voluntary. The court shall not accept a plea of guilty or solo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or solo contenders results from prior discussions between the attorney for the government and the defendant or the defendant's attorney. Page. 231.

https://books.google.com/books?
id=FVQrAwAAQBAJ&pg=PA584&lpg=PA584&dq=chief+justice+rehnquist+-
+the+people+in+prison+are+there+voluntarily&source=bl&ots=Mpt30ackEg&sig=hU9ulx5fDs
3QuYclCedG5tbsRG0&hl=en&sa=X&ved=0ahUKEwjtrpuHua7SAhXK4CYKHcoIAEMQ6AE
IRjAH#v=onepage&q=voluntary&f=false

## Article 4

The United States shall guarantee to every state in this union a republican form of government, and shall protect each of them against invasion; and on application of the legislature, or of the executive (when the legislature cannot be convened) against domestic violence.

## Article 4. Section 3. Claus 1.

New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States or Parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress.

## Article 3. Section 3. Clause 2.

The Congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture except during the life of the person attained.

## William Blackstone, Commentaries, 1765

This statute, it is obvious to observe, extends not only to fleets and armies, but also to forts, and other places of strength, within the realm; the sole prerogative as well of erecting, as manning and governing of which, belongs to the king in his capacity of general of the kingdom: and all lands were formerly subject to a tax, for building of castles wherever the king thought proper. This was one of the three things, from contributing to the performance of which no lands were exempted; and therefore called by our Saxon ancestors the trinoda necessitas: sc. pontis reparatio, arcis constructio, et expedition contra hostem. And this they were called upon to do so often, that, as sir Edward Coke from M. Paris assures us, there were in the time of Henry II 1115 castles subsisting in England. The inconvenience of which, when granted out to private subjects, the lordly barons of those times, was severely felt by the whole kingdom; for, as William of Newbury remarks in the reign of king Stephen, "erant in Anglia quodammodo tot rages bel potties tyranni, quot domini castellorum:" but it was felt by none more sensibly than by two suceeding princes, king John and king Henry III. And therefore, the kings of after times have been very cautious of suffering them to be rebuilt in a fortified manner: and sir Edward Coke lays it down, that no subject can build a caste, or house of strength imbattleled, or other fortress defensible, without the license of the king; for the danger which might ensue, if every man at his pleasure might do it.

http://press-pubs.uchicago.edu/founders/documents/a1_8_17s1.html


Wham v. United States, 180 F.2d 38 (D.C. Cir. 1950)

Wherefore, the court concluded that the United States, in **consenting to be sued** in tort, as it has by the Tort Claims Act, did not intend that those members of a class for which a

comprehensive system of compensation has otherwise been provided could seek benefits under the Act...

Congress in its role as the lawmaking body for the District of Columbia enacted the statutes authorizing establishment and operation of a fund to be known as "the policemen and firemen's relief fund, District of Columbia." Title 4, Section 501 et seq., District of Columbia Code (1940).

All important establishments and activities of the Municipal Government require Congressional sanction — every building, including those for the police and fire departments, every fund for support of those departments, and others fulfilling the various needs of the Municipality. Yet in a legal sense they are not instrumentalities of the Federal Government, but are under direct ownership and control of the District of Columbia, a municipal corporation. See Act of June 11, 1878, 20 Stat. 102, ch. 180, § 1, as amended by Act of June 28, 1935, 49 Stat. 430, ch. 332, § 1 (Title 1, Section 102, District of Columbia Code (1940)). The over all control by Congress of the Federal District as the seat of the national government (U.S.Const. Art. 1, Sec. 8, cl. 17) does not affect the distinct identity of the District of Columbia as a municipal corporation.

The weakness of the Government's entire argument, it seems to us, lies in a failure to recognize the force of the Brooks decision or to **draw essential distinctions between the federal and municipal governments and their employees**.

http://law.justia.com/cases/federal/appellate-courts/F2/180/38/388863/

Yet in a legal sense they are not instrumentalities of the Federal Government, but are under direct ownership and control of the District of Columbia, a municipal corporation. See Act of June 11, 1878, 20 Stat. 102, ch. **180**, § 1, as amended by Act of June 28, 1935, 49 Stat. 430, ch. 332, § 1 (Title 1, Section 102, District of Columbia Code (1940)). The over all control by Congress of the Federal District as the seat of the national government (U.S.Const. Art. 1, Sec. 8, cl. 17) does not affect the distinct identity of the District of Columbia as a municipal corporation.

https://scholar.google.com/scholar_case?case=12552956685766438070&q=Wham+v.+United+States,+180+F.2d+38&hl=en&as_sdt=6,44&as_vis=1

Balzac v Puerto Rico, United States Supreme Court (1922) No. 178.
The United States District Court is not a true United States court established under article 3 of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under article 4, 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts, in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as **a mere territorial court.**

http://caselaw.findlaw.com/us-supreme-court/258/298.html

Jenkins v. McKeithen

Codes:

28 USC 3002 15(A)

Definitions:

(15) "United States" means -

(A)  a Federal corporation;

(B)  An agency, department, commission, board, or other entity of the United States; or

(C)  an instrumentality of the United States.


26 USC 7701

Definitions:

(1)  PERSON. The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

(9) UNITED STATES. The term "United States" when used in a geographical sense includes only the States and the District of Columbia.

(10) STATE. the term "State" shall be construed to include the District of Columbia, where such construction is necessary to carry out provisions of this title.

(30) UNITED STATES PERSON. The term "United States person" means -

(A)  a citizen or resident of the United States,

(B)  a domestic partnership,

(C)  a domestic corporation,

(D)  Any estate (other than a foreign estate, within the meaning of paragraph (31)), and

(E)  any trust if

    (i)  a court within the United States is able to exercise primary supervision over the administration of the trust, and

    (ii)  one or more United States persons have the authority to control all substantial decisions the trust.


26 USC S. C. 3121

Definitions:

(e) STATE, UNITED STATES, AND CITIZEN. For purposes of this chapter -

(1)  STATE. The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam and American Samoa.

(2)  UNITED STATES.The term "United States" when used in a geographical sense includes the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa. An individual who is a citizen of the Commonwealth of Puerto Rico (but not otherwise a citizen of the United States) shall be considered, for purposes of this section, as a citizen of the United States.

5 USC 552a(2)


26 USC 638. Continental Shelf Areas.

(1)  the term "United States" when used in a geographical sense includes the seabed and subsoil of those submarine areas which are adjacent tot he territorial waters of the United States and over which the United States has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources.


Federal Rules of Criminal Procedure.

X. General Provisions

Rule 54. Application and Exception

(c) Application of terms. As used in these rules the following terms have the designated meanings.
"Act of Congress" includes any act of Congress locally applicable to and in force in the District of Columbia, in Puerto Rico, in a territory or in an insular possession.
http://weissparis.com/assets/fed_rules_criminal_procedure1.pdf


Federal Rules of Criminal Procedure.

Rule 1. Scope; Definitions

(1)  In General. These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United Staes.

(3) Territorial Courts. These rules also govern the procedure in all criminal proceedings in the following courts:

(A)  the district court of Guam;

(B)  the district court for the Northern Mariana Islands, except as otherwise provided by law; and

(C)  the district court of the Virgin Islands, except that the prosecution of offenses in that court must be by indictment or information as otherwise provided by law.

(b) DEFINITIONS. The following definitions apply to these rules:

(2) "Court" means a federal judge performing functions authorized by law.

(3) "Federal judge" means:

(A)  a justice or judge of the United States as these terms are defined in 28 USC 451.

(B)  a magistrate judge; and

(C)  a judge confirmed by the United States Senate and empowered by statute in any commonwealth, territory, or possession to perform a function to which a particular rule relates.

(4) "Judge" means a federal judge or a state or local judicial officer.

(5) "Magistrate Judge" means a United States magistrate judge as defined in 28 USC 631-639.

(9) "State" includes the District of Columbia, and any commonwealth, territory, or possession of the United States.

(12) "Victim" means a "crime victim" as defined by 18 USC 3771(e). [(e) Definitions(2) Crime Victim. (A) In general. The term "crime victim" means a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia.]

### 28 USC 451. DEFINITIONS.

The terms "district court" and "district court of the United States" means the courts constituted by chapter 5 of this title. The term "justice of the United States" includes the Chief Justice of the United States and the associate justice of the Supreme Court.

The term "judge of the United States" includes judges of the courts of appeals, district courts, Court of the International Trade and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior.

The terms "district" and "judicial district" means the districts enumerated in Chapter 5 of this title.

28 USC 1656 - Creation of new district or division or transfer of territory; lien enforcement.

The reaction of a new district or division or the transfer of any **territory** to another district or division shall not affect or divest any lean therefore acquired in a district court upon property within such district, division or territory.

28 USC 581

United States Trustees

(a) The Attorney General shall appoint one United States trustee for each of the following regions composed of Federal judicial distractions (without regard to section 451)

## CALIFORNIA

RTC 6017

"In this State" or "in the State" means within the exterior limits of the State of California and includes all territory within these limits owned by or ceded to the United States of America.

CCP 1916 California Code of Civil Procedure.

Manner of impeaching a record. Any judicial record may be impeached by evidence a want of jurisdiction in the Court or judicial officer, of collusion between the parties, or of fraud in the party offering the record, in respect to the proceedings.

CCP 418.10

(e)(3) Failure to make a motion under this section at the time of filing a demurrer or motion to strike constitutes a waiver of the issues of lack of personal jurisdiction, in adequacy of process, inadequacy of service of process, inconvenient forum, and delay in prosecution.

---

Merriam-Webster

## JURISDICTION

1. The power, right, or authority to interpret and apply the law, a matter that falls within the courts jurisdiction.
2. the authority of a sovereign power to govern or legislate, the power or right to exercise authority.
3. The limits or territory within which authority may be exercised.

```
(jurisdiction joor-is-dik'shun; esp. Brit., jor'is-' 114, n.
[OF. Jurisdiction, jurediction, fr. L. jurisdictio, fr. jus.,
juris, right, law+ dictio, a saying, speaking.] 1. Law. The
legal power, right, or authority to hear and determine a cause
or causes. 2. Authority of a sovereign power to govern or
legislate; control. 3. Sphere of authority. -Syn. See POWER. -
jurisdictional, adj. -ju'ris-dic'tion-al-ly, adv.Webster's New
Collegiate Dictionary, Based on Webster's New International
Dictionary, Second Edition, 1949)
```

## TERRITORY

1. a geographic area belonging to or under the jurisdiction of a governmental authority. An administrative subdivision of a country. A part of the U.S. not included within any state but organized with a separate

legislature. A geographic area (such as a colonial possession) dependent on an external government but having some degree of autonomy.
2. An indeterminate geographic area. A field of knowledge or interest.
3. An assigned area; especially: one in which a sales representative or distributor operates. An area often including a nesting or denning site and a variable foraging range that is occupied and defended by an animal or group of animals.

(ter'i-to'ri or esp. Brit., -ter-i), n.;pl. -res (is). [L. territorium, fr. Terra the earth.] 1. An extent of land and waters or any given portion thereof, belonging to, or under the jurisdiction of, a prince, state, or government. 2. Any definite portion of the area of a state considered by itself, as an area of a state not sovereign, but governed as a dependency, or having a legal system more or less peculiar to itself. 3. A large extent or tract of land; a region; district. 4. [often cap.] a. In the United States, a portion of the country not included within any state, but organized with a separate legislature, under a territorial governor and other officers appointed by the President and U.S. Senate. Alaska and Hawaii are now the only territories of the United States. b. In Candid and Australia, a similarly organized area not yet formed into a province or state. 5. An assigned or pre-empted area, as that assigned to a commercial traveler. Webster's New Collegate Dictionary, Based on Webster's New International Dictionary, Second Edition, 1949)

### ORDINARY

1. A prelate exercising original jurisdiction over a specified territory or group. The ordinary of a diocese is a bishop. 2. a clergyman appointed formerly in England to attend condemned criminals. A judge of probate in some states of the U.S.
2. Often capitalized: the parts of the Mass that do not vary from day to day. The "Our Father" is part of the ordinary of the Mass.
3. The regular customary condition or course of things - usually used in the phrase out of the ordinary. W haven't done anything out of the ordinary.
4. British: a meal served to all comers at a fixed price. chiefly British: a tavern or eating house serving regular melas.
5. A common heraldic charge of simple form.

(or'di-nar'y (or'di-ner'l or, esp. Brit., ner-i, -d'n-ri), adj: [L. Ordinarius, fr. ordo, ordinis, order.] 1. Having or taking its place according to customary occurrence or procedure; usual; normal. 2. Of common rank, quality, or ability; not distinguished by superiority of any kind; commonplace. 3. Law. Having or designating immediate or original jurisdiction, as opposed to that which is delegate; also, belonging to such jurisdiction. -Syn. See COMMON. -Ant. Extraordinary. -n.;pl. - IES. (-iz). 1. An officer who has original jurisdiction in his own right, and not by duputation; specif., Eng. Eccl. Law, the

archbishop of a province, or a bishop or his deputy in a
diocese; Law, in some states of the U.S., a judge of probate. 2.
Formerly, in England, a clergyman appointed to prepare criminals
for the death penalty. 3. A meal served to all comers at a fixed
price; a talbe-d'hote meal. 4. A tavern or eating house; orig.
and esp., one that serves regular meals. 5. A bicycle of the
early type, with a very large and a very small wheel. 6. Eccl.
An order of service; specify. [sometimes cap.], the parts of the
Mass which do not vary from day to day, or the book containing
this. 7. Her. A charge or bearing of simple form and in constant
use, as the bend, chevron, chief, cross, fess, pale, and
saltier. -in ordinary. In actual and constant service. -or'di-
nar'i-ly, adv. -or'di-nar'i-ness, n. Webster's New Collegiate
Dictionary, Based on Webster's New International Dictionary,
Second Edition, 1949)

Webster's New Collegiate Dictionary, Based on Webster's New
International Dictionary, Second Edition, 1949)

[note. A man, being a natural part of (accompaniment) of the land.]

---

### **Federal Rules of Civil Procedure** > TITLE IV. PARTIES
Rule 17. Plaintiff and Defendant; Capacity; Public Officers
here if we decide to print the summary in the page display

(a) **Real** Party in Interest.
(1) *Designation in General.* An action must be prosecuted **in the name of
the real party in interest.** The following may sue in their own names
without joining the person for whose benefit the action is brought:
(A) an executor;
(B) an administrator;
(C) a guardian;
(D) a bailee;
(E) a trustee of an express trust;
(F) a party with whom or in whose name a contract has been made for
another's benefit; and
(G) a party authorized by statute.
(2) *Action in the Name of the United States for Another's Use or Benefit.*
When a federal statute so provides, an action for another's use or benefit
must be brought in the name of the United States.
(3) *Joinder of the* **Real Party** *in Interest.* The court may not dismiss an
action for failure to prosecute in the name of the real party in interest until,
after an objection, a reasonable time has been allowed for the real party in

interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

(b) Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

(c) Minor or Incompetent Person.

(1) *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person:

(A) a general guardian;

(B) a committee;

(C) a conservator; or

(D) a like fiduciary.

(2) *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

(d) Public Officer's Title and Name. A public officer who sues or is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added.

---

SOVEREIGNTY

"Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts And the law is the definition and limitation of power..." [Yick Wo v. Hopkins, 118 US 356, 370 Quotiens dubia interpretatio libertatis est, secundum libertatem respondendum erit]

"The very meaning of 'sovereignty' is that the decree of the sovereign makes law." American [Banana Co. v. United Fruit Co., 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann.Cas. 1047].

A consequence of this prerogative is the legal ubiquity of the king. His majesty in the eye of the law is always present in all his courts, though he cannot personally distribute justice. (Fortesc.c.8. 2Inst.186)  His judges are the mirror by which the king's image is reflected. [1 Blackstone's Commentaries, 270, Chapter 7, Section 379]

It is one thing to find that the Tribe has agreed to sell the right to use the land and take valuable minerals from it, and quite another to find that the Tribe has abandoned its sovereign powers simply because it has not expressly reserved them through a contract. To presume that a sovereign forever waives the right to exercise one of its powers unless it expressly reserves the right to exercise that power in a commercial

agreement turns the concept of sovereignty on its head. [MERRION ET AL., DBA MERRION & BAYLESS, ET AL. v. JICARILLA APACHE TRIBE ET AL. 1982.SCT.394 , 455 U.S. 130, 102 S. Ct. 894, 71 L. Ed. 2d 21, 50 U.S.L.W. 4169 pp. 144-148.]

NEW YORK CODE - N.Y. CVR. LAW § 2 : NY Code - Section 2: Supreme sovereignty in the people - No authority can, on any pretence whatsoever, be exercised over the citizens of this state, but such as is or shall be derived from and granted by the people of this state.

"'Sovereignty' means that the decree of sovereign makes law, and foreign courts cannot condemn influences persuading sovereign to make the decree." [Moscow Fire Ins. Co. of Moscow, Russia v. Bank of New York & Trust Co., 294 N.Y.S. 648, 662, 161 Misc. 903].

RESERVATION OF SOVEREIGNTY: "[15] (b) Even if the Tribe's power to tax were derived solely from its power to exclude non-Indians from the reservation, the Tribe has the authority to impose the severance tax. Non-Indians who lawfully enter tribal lands remain subject to a tribe's power to exclude them, which power includes the lesser power to tax or place other conditions on the non-Indian's conduct or continued presence on the reservation. The Tribe's role as commercial partner with petitioners should not be confused with its role as sovereign. It is one thing to find that the Tribe has agreed to sell the right to use the land and take valuable minerals from it, and quite another to find that the Tribe has abandoned its sovereign powers simply because it has not expressly reserved them through a contract. To presume that a sovereign forever waives the right to exercise one of its powers unless it expressly reserves the right to exercise that power in a commercial agreement turns the concept of sovereignty on its head. (emphasis added) [MERRION ET AL., DBA MERRION & BAYLESS, ET AL. v. JICARILLA APACHE TRIBE ET AL. 1982.SCT.394 , 455 U.S. 130, 102 S. Ct. 894, 71 L. Ed. 2d 21, 50 U.S.L.W. 4169 pp. 144-148].

STATE SOVEREIGNTY VS. POPULAR SOVEREIGNTY: A general discussion of two types of sovereignty, and the relative positions of each. (attached)
As independent sovereignty, it is State's province and duty to forbid interference by another state or foreign power with status of its own citizens. [Roberts v Roberts (1947) 81 CA2d 871, 185 P2d 381. Black's Law Dictionary, 4th Ed., p 1300]

The people of this State, as the successors of its former sovereign, are entitled to all the rights which formerly belonged to the King by his prerogative. [Lansing v. Smith, 4 Wend. 9 (N.Y.) (1829), 21 Am. Dec. 89 10C Const. Law Sec. 298; 18 C Em.Dom. Sec. 3, 228; 37 C Nav.Wat. Sec. 219; Nuls Sec. 167; 48 C Wharves Sec. 3, 7.]

SOVEREIGN PEOPLE, Blacks 4th edition - The political body, consisting of the entire number of citizens and qualified electors, who, in their collective capacity, possess the powers of sovereignty and exercise them through their chosen representatives.

SOVEREIGN, Blacks 4th edition - A person, body, or state in which independent and supreme authority is vested; a chief ruler with supreme power; a king or other ruler with limited power.

"The doctrine of Sovereign Immunity is one of the Common-Law immunities and defenses that are available to the Sovereign." [Yick Wo v. Hopkins, 318 US 356, 371 and Terry v. Ohio, 392 US 1, 40]

"In United States, sovereignty resides in people. The Congress cannot invoke the sovereign power of the People to override their will as thus declared." [Perry v. US, 294 U.S330]

"It will be admitted on all hands that with the exception of the powers granted to the states and the federal government through the Constitutions, the people of the several states are unconditionally sovereign within their respective states." [Lansing v. Smith, 4 Wendell 9, (NY) 6 How416, 14 L. Ed. 997].

Republican government. One in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. [In re Duncan, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219; Minor v. Happersett, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627." Black's Law Dictionary, Fifth Edition, p. 626]

"The sovereignty of a state does not reside in the persons who fill the different departments of its government, but in the People, from whom the government emanated; and they may change it at their discretion Sovereignty, then in this country, abides with the constituency, and not with the agent; and this remark is true, both in reference to the federal and state government." [Spooner v. McConnell, 22 F 939 @ 943]

...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects...with none to govern but themselves..... [CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @DALL (1793) pp471-472]

The very meaning of 'sovereignty' is that the decree of the sovereign makes law. [American Banana Co. v. United Fruit Co., 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann.Cas. 1047]

"... the states are separate sovereigns with respect to the federal government" [Heath v. Alabama, 474 U.S. 82]

It is the public policy of this state that public agencies exist to aid in the conduct of the people's business.... The people of this state do not yield their sovereignty to the agencies which serve them. ...at the Revolution, the sovereignty devolved on the people; and they are truly the

sovereigns of the country, but they are sovereigns without subjects...with none to govern but themselves..... [CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @DALL (1793) pp471-472.]

The very meaning of 'sovereignty' is that the decree of the sovereign makes law. [American Banana Co. v. United Fruit Co., 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann.Cas. 1047.]

The assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice. [Davis v. Wechsler, 263 US 22, 24.]

Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them. [Miranda v. Arizona, 384 US 436, 491.]

There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights. [Sherer v. Cullen, 481 F 946.]

The state cannot diminish rights of the people. [Hurtado v. People of the State of California, 110 U.S. 516.]

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [Constitution for the United States of America, Article VI, Clause 2.]

SOVEREIGNTY [Black's Law Dictionary, Fourth Edition] The power to do everything in a state without accountability,—to make laws, to execute and to apply them, to impose and collect taxes and levy contributions, to make war or peace, to form treaties of alliance or of commerce with foreign nations, and the like. Story, Const. Sec 207

Sovereignty in government is that public authority which directs or orders what is to be done by each member associated in relation to the end of the association. It is the supreme power by which any citizen is governed and is the person or body of persons in teh state to whom there is politically no superior. The necessary existence of the state and that right and power which necessarily follow is "sovereignty." By "sovereignty in its largest sense is meant supreme, absolute, uncontrollable power, the absolute right to govern. The word which by itself comes nearest to being the definition of "sovereignty" is will or volition as applied to political affairs. City of Bisbee v. Cochise County, 52 Ariz. 1, 78 P.2d 982, 986.

The words "sovereign state" are cabalistic words, not understood by the disciple of liberty, who has been instructed in our constitutional schools. It is our appropriate phrase when applied to an absolute despotism. The idea of sovereign power in the government of a republic is incompatible with the existence and foundation of civil liberty and the rights of property. [Gaines v. Buford, 31 Ky. (1 Dana) 481, 501]. "The people of this state do not yield their sovereignty to the agencies which serve them....at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects... with none to govern but themselves..." [CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @DALL (1793) pp471-472.]

"The very meaning of 'sovereignty' is that the decree of the sovereign makes law". [American Banana Co. v. United Fruit Co., 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann.Cas. 1047.]

A consequence of this prerogative is the legal ubiquity of the king. His majesty in the eye of the law is always present in all his courts, though he cannot personally distribute justice. (Fortesc.c.8. 2Inst.186) His judges are the mirror by which the king's image is reflected. [1 Blackstone's Commentaries, 270, Chapter 7, Section 379] "The people of this State, as the successors of its former sovereign, are entitled to all the rights which formerly belonged to the King by his prerogative". [Lansing v. Smith, 4 Wend. 9 (N.Y.) (1829), 21 Am.Dec. 89 10C Const. Law Sec. 298; 18 C Em.Dom. Sec. 3, 228; 37 C Nav.Wat. Sec. 219; Nuls Sec. 167; 48 C 15 Wharves Sec. 3, 7.]

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

1

2

3  On Oregon IN THE UNITED STATES DISTRICT COURT

4  FOR THE DISTRICT OF OREGON seeking jurisdiction!

5

6  Ronald Charles Vrooman )  Case No. 3:17-cv-00138-KI

   ,            )
7      Petitioner Pro Se'  )  Reply to the denial of Habeas Corpus,
                )  formerly known as Traverse; I object
8               )  to and deny the denial of my Habeas
           v.   )  Corpus.
9               )
   JOHN T. MERCER; PAT  )
10  GARRETT; T. KEMPTON and  )
               )
11  Garr M. King and Michael
   Mosman of courthouse 740

12

13  I am, ronald charles vrooman a peaceful man on the Land of Oregon, not the state of Oregon,
14  this state or any other permutation of Oregon, am under threat, duress and coercion. Previously I
15  was incarcerated under color of law and currently I am under bench probation, with my right to
16  bear arms Infringed, my right to travel infringed with a privilege, several of the Bill of Rights
17  guarantees denied. Unlawfully. Court Document attached. I am still seeking lawful relief from
18  the orders of John T. Mercer, and remedy for the incarceration, fines, fees and probation issues
19  and traffic issues of the Beaverton Municipal Court by this document. I request review by the
20  Court for violations of my Substantive and Procedural 4th Amendment Due Process Rights.

21  DISC available transcript soon.

22  In order to state "a meritorious claim [pursuant to Section 1983], a plaintiff must allege that he
23  was deprived of some constitutional right." Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir.
24  1981). .FOWLER V. VALENCOURT North Carolina Court of Appeals·108 N.C. App. 114
25  (N.C. Ct. App. 1992)

26  I restated and stated them above.

27

28  The State Actors involved have made no attempt to prove Jurisdiction in this case.


MY COMMI:

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

29          *Title 5 USC 556 (d) proof of Jurisdiction must appear on the Record prior to the
30      commencement of any proceedings. [t]he Oath of office is a quid pro quo contract cf [U.S.
31      Const. Art. 6, Clauses 2 and 3, Davis Vs. Lawyers Surety Corporation., 459 S.W. 2nd. 655, 657.,
32      Tex. Civ. App.] in which clerks, officials, or officers of the government pledge to perform
33      (Support and uphold the United States and state Constitutions) in return for substance (wages,
34      perks, benefits). Proponents are subjected to the penalties and remedies for Breach of Contract,
35      Conspiracy cf [Title 18 U.S.C., Sections 241, 242]. Treason under the Constitution at Article 3,
36          Section 3., and Intrinsic Fraud cf [Auerbach v Samuels, 10 Utah 2nd. 152, 349 P. 2nd.
37      1112,1114. Alleghany Corp v Kirby., D.C.N.Y. 218 F. Supp. 164, 183., and Keeton Packing Co.
38      v State., 437 S.W. 20, 28]. Refusing to live by their oath places them in direct violation of their
39      oath, in every case. Violating their oath is not just cause for immediate dismissal and removal
40      from office, it is a federal crime. Federal law regulating oath of office by government officials is
41      divided into four parts along with an executive order which further defines the law for purposes
42          of enforcement. 5 U.S.C. 3331, provides the text of the actual oath of office members of
43          Congress are required to take before assuming office. 5 U.S.C. 3333 requires members of
44      Congress sign an affidavit that they have taken the oath of office required by 5 U.S.C. 3331 and
45      have not or will not violate that oath of office during their tenure of office as defined by the third
46          part of the law, 5 U.S.C. 7311 which explicitly makes it a federal criminal offense (and a
47          violation of oath of office) for anyone employed in the United States Government (including
48      members of Congress) to "advocate the overthrow of our constitutional form of government"

49

50      "Every State law must conform in the first place to the Constitution of the United States, and
51      then to the subordinate constitutions of the particular state; and if it infringes upon the provisos
52          of either, it is so far void." Houston v. Moore, 18 US 1, 5 L.Ed 19 (1840).

53      The obligations of a contract are impaired by a law which renders them invalid, or releases or
54      extinguishes them ( Sturges v. Crowninshield, supra, pp. 197, 198) and impairment, as above
55      noted, has been predicated of laws which without destroying contracts derogate from substantial
56      contractual rights. HOME BLDG. L. ASSN. V. BLAISDELL U.S. Supreme Court 290 U.S. 398
57                                          (1934)

58      I do not understand, nor do I see the necessity for, the metaphysical distinction between policies
59      that are themselves unconstitutional and those that cause constitutional violations. See ante, at
60          823-824, and n. 7. If a municipality takes actions — whether they be of the type alleged in
61      Monell, Owen, or this case — that cause the deprivation of a citizen's constitutional rights, §
62      1983 is available as a remedy. OKLAHOMA CITY v. TUTTLE•471 U.S. 808, 832 (1985)

63      "In all courts of the United States the parties may plead and conduct their own cases personally
64      or by counsel * * *." 28 U.S.C.A. § 1654.

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

65  "The Constitution does not force an attorney upon a defendant." Adams v. United States, 317
66  U.S. 269, 279, 63 S. Ct. 236, 242, 87 L.Ed. 268.DUKE v. UNITED STATES•255 F.2d 721, 724
67  (9th Cir. 1958) The Beaverton Municipal court did. It is on the record and objected to and filed
68  as wrong.

69  Our rule is generally that jurisdictional discovery should be allowed unless the plaintiff's claim is
70  "clearly frivolous." Nehemiah v. The Athletics Congress, 765 F.2d 42, 48 (3d Cir. 1985), citing
71  Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 362
72  (3d Cir. 1983) MSL AT ANDOVER, INC. V. AMERICAN BAR ASS'N United States Court of
73              Appeals, Third Circuit.·107 F.3d 1026 (3d Cir. 1997)

74

75  **131.035 When departures, errors or mistakes in pleadings or proceedings are material.** No
76  departure from the form or mode prescribed by law, error or mistake in any criminal pleading,
77  action or proceeding renders it invalid, unless it has prejudiced the defendant in respect to a
78                      substantial right. [1973 c.836 §4]

79      United States Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519,
80  Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying
81      on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business
82  Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991)
83  (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross
84          v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).

85  In re Haines: pro se litigants (Plaintiff is a pro se litigant) are held to less stringent pleading standards
86  than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are
87  entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if
88  court dismisses the pro se litigant (Plaintiff is a pro se litigant) without instruction of how pleadings
89              are deficient and how to repair pleadings. In re Anastasoff:

90                              TAKE HEED

91      I do lawful not legal and my best effort must be accepted. I am civil in my approach and
92  withhold honor as defined by Black's 6th as I am dealing with an unknown courts that have not
93      proven their bona fides. This need not be respectful as that word is not in Black's 6th.

94                  Traverse see Black's 6th page1500:

95                      Preliminary Statement:

96  My first friend/2nd Chair Richard L. Koenig filed this Habeas Corpus and he did it while I was in
97      the Washington County Jail. I appreciate his effort and Reply to the denial with a form of
98          traverse also known as a Reply to the Denial of Habeas Corpus.

99                  On the affirmative for the plaintiff:

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

100 The right to travel is guaranteed by the Constitutions of the United States of America in any of
101 the forms currently in publication. Whether it is from the Constitution of United States Inc or the
102 Original Government not the corporate governance or the one from Manhattan and the
103 Netherlands. This is in response to the NO Constitutional issue statement. "A license when
104 granting a privilege, may not, as the terms of its possession, impose conditions which require the
105 abandonment of constitutional rights." Terral v. Burke Construction Co.,.

106                    Olmsted v. United States, (1928) 277 U.S. 438
107    "Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it
108    invites every man to become a law unto himself; it invites anarchy." The Accardi Doctrine come
109                                   to mind.

110

111 The right to bear arms is also an inalienable right guaranteed by our founding documents. Named
112 Organic in the USC. This is in the probation portion of John T. Mercer's sentencing. A class C
113 misdemeanor does not rise to the power to deny a Constitutional right, unusual punishment.

114 36 months probation to the Beaverton Municipal Court Judge John T. Mercer was obtained in
115 error as my rights were not guaranteed as he agreed on the record, that the First Law of the Land
116 was the Constitution of/for the (u)United States of America and the second law of the Land of
117 Oregon was the Constitution of Oregon. FRC vs. GE 281 U.S. 464, Keller vs. PE 261 U.S. 428,
118 1 Stat. 138 -178) "Judges do not enforce statutes and codes. Executive Administrators enforce
119 statutes and codes. John T. Mercer never proved his bona fides to Judge.

120

121 The denial on page three at the bottom; the <u>sentence is relatively short.</u> You do 20 days in
122 Washington County jail without proper medication and treatment at 78 years of age, then say
123 that. Then the sentence is still going with bondage for 36 months and the loss of my second
124 amendment guarantee of right to bear arms. I challenge the assertion on relatively short. Garr M.
125 King made that assertion. I would like to see some proof. I can provide proof of cruel and
126 unusual punishment by letters and documents about medical abuse with the knowledge and
127 consent, by their silence and ignorance is no excuse, if you are the one making the action then
128 you are responsible for the action. Trying, sentencing, Incarceration without proof of jurisdiction
129 filed into the record. That is three errors when reading the law.

130 Unlike attorneys members of the British Accredited Registry the BAR and required to have a
131 FARA card, I am not required to quote case law and perform to the Judges' whim. I only need to
132 be a man on the land and those opposing me need to prove territorial jurisdiction. It was not
133 done. This is void to be known as such with no redeeming features, ab initio.

134 Then I am told by knowledgeable people that I can only use one claim at a time or the court gets
135 confused and may grant jurisdiction because of something else I said. That is ridiculous to me. If

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

136  a judge cannot handle what I can cope with, I have the wrong judge. Besides they must contact
137  me to clear up any errors or issues, so says the law.

138  Ronald Charles Vrooman is the trustee of the Private Membership Association RONALD
139  CHARLES VROOMAN and under title IV rule 17b without mala in se crime the pubic corporate
140  governance has no jurisdiction or authority over me. That information was provided to the
141  Beaverton Municipal Court and is on the record. Accardi Doctrine again obey you own rules.

142  Another reason for this whole thing to be declared wrong from the start and just piling one error
143  on another and the judge saying,"if you don't like it appeal, if you say jurisdiction once more
144  you will be in contempt, you are a person and I will try you as a person." So said John T. Mercer
145  on the record and I paraphrase very closely to the quote.

146  I researched and have a copy of the title documents on the Mark Hatfield Building 1000 SW 3rd
147  in Portland. United States of America, code for we the people, is on the title; not US inc or DC
148  Municipal Court. The GSA rents space to the courthouse 740 and the DOJ and the US Marshall.
149  That is code for you have no jurisdiction territorially over me. There is jurisdiction over the
150  Beaverton Municipal Court. Correct their errors with a Habeas Corpus.

151  I submitted my document on my status into the court UC 7945181 records and recorded it with
152  the city of Beaverton recorder and copied the prosecutor. I know who I am and proved it with
153  unrebutted affidavit. I also have a birth certificate in cursive sign by people now deceased.
154  Therefore I am the last man standing and none can refute me.

155  The medical document from my primary care physician is also attached as are the final document
156  for territorial jurisdiction to the prosecutor T. Kempton and the final document prior to
157  sentencing to the Beaverton Municipal Court. And the BMC attempt to obtain jurisdiction by
158  hearing a document that stands, as it is expose facto, I went to jail, one cannot un-ring the bell. If
159  you are confused call me, just like the law says.

160  The attached Demurrer proves all that is needed for proof of the Constitutional right to travel.
161  The SCOTUS has ruled many times that states, the state, this state may not take a right and turn
162  it into a privilege and then charge a fee or deny the right.

163  The statement that about exhausting his available state remedies being a reason to dismiss is in
164  error. See the denial of a stay from Washington County Circuit Court Judge Upton. Also see the
165  request for dismissal from the Beaverton Municipal Court. The Demurrer entered into the
166  Beaverton Municipal court that was denied. Denial is not an option on Demurrer.

167      Therefore, it is obvious that remedy in many forms was attempted and denied or refused.

Ronald Charles Vrooman general delivery Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

168    Next comes the argument of appeal and post conviction processing. When my first friend filed
169    this, it was for Habeas Corpus from the Federal Court due to several factors. Taking things in a
170    chronological order is how Richard and I are working through the legal maze set before us.

171    First comes Habeas Corpus. That is available immediately from Federal Court. It was filed at
172    once and denied while I was still in jail. How could any of the other options been available?
173    They were not. An appeal from jail requires the inmate to relinquish his document for
174    photocopy. Thereby, placing his appeal in jeopardy by giving it to those incarcerating him, in
175    this case employees of Pat Garrett. Then to mail from jail it must be done in the envelopes
176    provided by the jail. Thus not being able to enter the First class USPS system with a ROUND
177    stamp from the inmate's hand. Neither is certified return receipt requested available. These are
178    all civil rights and due process violation 18 UCS 3571.

179    From reading the DENIAL from Garr. M. King; where is the signed document whereby Richard
180    or Ronald agreed to a Pro Tem? There is none. I have the unsigned form mailed to me.
181    Therefore, how does Garr. M. King find the authority to have jurisdiction? There is none.
182    However, in color of law, a denial was issued. That must be in error.

183    Therefore, hunt up an Article III judge to grant the Habeas Corpus and void all the charges in UC
184    7945181and related traffic issues of the Beaverton Municipal Court. Should you take more than
185    3 weeks, your response will be termed late and a violation of due process and civil rights. The
186    next step is Human Rights Violations in International Court

*without STATE of OREGON*
*without county of Washington*
*without city of Beaverton*

*Ronald Charles Vrooman*
*on Oregon in the United*
*States of America*

*under penalty of perjury*
*signed and affirmed before me 3/1/2017*

*Notary Public-State of Oregon*  3/1/17

OFFICIAL SEAL
MELISSA MAE STUDINGER
NOTARY PUBLIC - OREGON
COMMISSION NO. 941448
MY COMMISSION EXPIRES AUG. 16, 2019

INGER
GON
448
, 2019

5038460060

To: Suzanne M. Upton Judge
Washington County Circuit Court

From: Ron Vrooman

I need a stay of execution
on fines and probation at the
Beaverton Municipal Court.

I am filing my appeal in Salem
Thursday 2/16/2017. A motion to
stay will take a minimum of 5 weeks

Therefore: Request for Humanitarian
stay of execution on fines and probation,
temporarily, say 120 days, or Appeal.

It took all my money to bail out
prior to trial. $2,000.00 on 20K for
traffic. One was a class "C". The
court took that.

I did 20 days in WA. Co. Jail. Now
I need a stay.

Please help.

Ron Vrooman
5036418575
Fax & phone

MOTION IS DENIED
Judge Suzanne Upton
2.14.17

# RONALD CHARLES VROOMAN

non-resident alien c/o general delivery Beaverton, Oregon Non-Domestic [ 97005 ]

Tim Kempton Prosecutor city of Beaverton 4755 SW Griffith Dr                    January 23, 2017

## RE: Beaverton Municipal Court case # 7945181 Copy of Filings to Complete and Exhaust Private Administrative Remedy In Regards to Misapplication of Statutes or otherwise.

RECEIVED                    RECEIVED

Dear _Tim Kempton:

JAN 2 3 2017            JAN 2 3 20

This communique is sent to you in regards to the above matter.

Beaverton Municipal   City Attorney's Office

Under necessity, and per my Right to exhaust my "Private Administrative Remedy" in this matter, to obtain the necessary evidence and related information in regards to the so-called charges, please find enclosed a more formal 'Notice and Declaration in Challenge to the Jurisdiction.'

As such, due to this very time sensitive matter, under necessity, I require you to produce and provide me with all necessary 'Proof of Jurisdiction', whether subject matter, personum, political, contractual or otherwise, and/or produce and make available to me all documents on file or obtainable from the State of Oregon, County of Washington and/or the Beaverton municipal corporation which would demonstrate that I am am a party to any social compact or contract which can be demonstrated to operate to confer any contractual, controlling, insurable, lawful, legal, pecuniary, regulatory, or any other interest in my being and/or property to the benefit of the county, State or City of Beaverton.

Under necessity, you are given ten days to provide and produce all necessary evidence of jurisdiction in and for the above case matter, as sentencing is around the corner.

Since I have challenged jurisdiction at least 4 times before, with no 'evidence' coming forward, should you fail or refuse to produce all evidence of jurisdiction at this time, by your refusal, failure and therein your silence, your dishonor and silence will be accepted as your 'silent tacit agreement' that no such jurisdiction exists per the above case in the Beaverton Municipal Court, that the case is a 'nullity' & 'void' and you agree to the engagement of fraud in this matter, in collusion and conspiracy with others in this matter and you agree to be the liable, culpable and responsible party, along with others, via a scheme to cause me great injury per your actions per this matter, re; 'constitutional impermissible application of statues' and otherwise and you agree to pledge all your property, assets and that of your spouse and you agree to subjugation and subrogation as you have agreed to misapplication of statue, misrepresentation of law, commissions of various frauds against me.   Thanking you advance per this matter, I remain,

Sincerely,

without   STATE OF OREGON
without   COUNTY OF WASHINGTON
without   CITY OF BEAVERTON

Ronald Charles Vrooman – private man, one of the Joint Tenants of the soyereignty. on oregon in the united states of America

under penalty of perjury
signed and affirmed before me on January 23, 2017



MMSE 1/23/17



OFFICIAL SEAL
MELISSA MAE STUDINGER
NOTARY PUBLIC - OREGON
COMMISSION NO. 941448
MY COMMISSION EXPIRES AUG. 16, 2019

Ronald Charles Vrooman General Delivery, Beaverton, Oregon  [97005] 503 641 8375
ronvrooman38@gmail.com

**RECEIVED**

JAN 2 3 2017

**City Attorney's Office**

1      MUNICIPAL COURT OF THE CITY OF BEAVERTON

2                          4755 SW Griffith Dr.

3      COUNTY OF WASHINGTON, STATE OF OREGON

4    RONALD CHARLES VROOMAN
     CES TUI QUI TRUST                    )      Case Number (s): UC 7945181
5    Defendant,                           )
                                          )              UI 2071731
6    Ronald Charles Vrooman, in propria   )
     person sui juris, a Sentient Man,    )      **ADMINISTRATIVE AND**
7    Wrongly accused, one of the Joint    )      **JUDICIAL NOTICE**
     Tenants of the sovereignty.          )      **AS TO AGREEMENT BY THE**
8                                         )      **STATE OF OREGON OF NO**
                                          )      **PROOF OF JURISDICTION VOID**
9    V                                    )      **CASE – VOID JUDGMENT**
                                          )      **REQUEST FOR DISMISSAL**
10   STATE OF OREGON                      )
     Plaintiff                            )

11

12

13

14   I am, ronald charles vrooman a peaceful man on Oregon, not the state of Oregon, under threat,
15   duress and coercion.

16   **131.035 When departures, errors or mistakes in pleadings or proceedings are material.** No
17   departure from the form or mode prescribed by law, error or mistake in any criminal pleading,
18   action or proceeding renders it invalid, unless it has prejudiced the defendant in respect to a
19   substantial right. [1973 c.836 §4]

20   The prosecutor Tim Kempton has not proven territorial jurisdiction in this case.  I bring the
21   formal claim: territorial, personam and subject matter jurisdiction against a man, ronald charles
22   vrooman, must be proven or there is no case.

23   On and for the record I have asked this court to name the type of law form, i.e. admiralty,
24   maritime, equity, martial, commercial, constitutional, common law, ecclesiastical, or any other
25   form of law unbeknownst to me. That information has been denied. I must make my best guess.

26   Proof of jurisdiction, as repeatedly (on or about 20) requested, must appear on the record of the
27   court. Once the court has knowledge that subject matter jurisdiction or any jurisdiction is
28   lacking, the court (meaning the judge John T. Mercer) has no discretion but to dismiss the action.

**RECEIVED**

JAN 2 3 2017

pc. Vrooman

Ronald Charles Vrooman General Delivery, Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

29    IT IS DECLARED: that RONALD CHARLES VROOMAN shall hereby do business as a
30    private membership association under its own constitution and bylaws on this 8th day of January,
31    2017 6423531(1-12,13,14-17)  I am the trustee of this private membership association. This is
32    under Title IV rule 17 b,3,A,  the 1st and 14th amendments, I am the trustee, Ronald Charles
33    Vrooman.

34    Therefore, the flesh and blood man Ronald Charles Vrooman trustee of the private membership
35    association seeking to reach harmony, doing business as the private membership association
36    RONALD CHARLES VROOMAN, bought tags for the plates to the Volvo and applied for a
37    privilege permit to operate license, had a DEQ test and paid for it. All of these documents were
38    provided to the court and prosecutor Tim Kempton.

39    There is no contract between the peaceful man and the STATE OF OREGON. Only between the
40    Private Membership Association, I am the trustee, and the corporate governance.

41    There is the threat of jail time for the class "C" misdemeanor fail to display or possess operators
42    license, which is cruel and unusual punishment for a 78 year old man, Ronald Charles Vrooman
43    in ill health. This is proven by the attached letter from Sarah Goodlin M.D., VA Medical Center
44    Portland, Oregon.

45    There is a Bail set at $20,000.00, 10% required for release. This is excessive. There it is
46    insufficient reason to suspect a peaceful man, Ronald Charles Vrooman of flight, who is in good
47    standing, of good morals, a 28 year member of the community and a member of the Beaverton
48    Oversight Committee.

49    Two Counter claims for jurisdiction were filed into UC 7945181 and ignored.

50    That due to the above, this case is a nullity (null & void), as the State has failed to prove
51    jurisdiction and any such judgment from this court is a void judgment.

52    That, the State, by and through the Prosecutor, failed and/or refused to respond to or rebut

53    Ronald Charles Vrooman's "NOTICES  and multiple CHALLENGES TO THE JURISDICTION

54    and DEMAND THAT ALL CHARGES BE DISMISSED" in a timely manner (within 30 days)

55    and is in dishonor/default, of failing or refusing to prove jurisdiction and therein by their silence

56    acquiesce, therefore the Prosecutor has accepted and agreed to all enumerated points in all

57    document challenging jurisdiction .By their silence they acquiesce and that the State of Oregon

58    lacks jurisdiction, territorial, personum or otherwise, in any manner over Ronald Charles

59    Vrooman and such is now deemed 'fact' in the record of this matter.

Ronald Charles Vrooman General Delivery, Beaverton, Oregon  [97005] 503 641 8375
ronvrooman38@gmail.com

60    That, Ronald Charles Vrooman 'accepts for value' "The unanimous  Declaration of the Thirteen

61    united States" AKA; "The Declaration of Independence" as a declaration and Trust to apply to

62    him.

63    Proof of jurisdiction, as repeatedly requested, must appear on the record of the court. Once the
64    court has knowledge that subject matter is lacking, the court (meaning the judge John T. Mercer)
65    has no discretion but to dismiss the action. Failure to dismiss the action means the court is
66    proceeding in clear absence of all jurisdiction and subjects the judge John T. Mercer to suit.

67    That, per paragraphs above, the State has acquiesced by not responding to any filing, that Ronald
68    Charles Vrooman is not a party to the of Oregon Constitution and is not named in State statutes,
69    as Ronald Charles Vrooman is a private man upon the land, a 'U.S. Constitution 1787 - Article 4
70    - American Public Citizen, and is one 'Official Credit authorizing Officer' and having
71    unalienable Rights and those expressed in the "Declaration of Independence", of Rights of;
72    "Life, Liberty and the pursuit of Happiness", with all such Rights as "upheld, protect(ed) and
73    defend(ed)" by and through each and all 'officers' of the State of Oregon including but not
74    limited to the 'officers' of the "City of Beaverton Police ", a municipal corporation …to uphold,
75    protect and defend such Rights.

76    That, all officers of the State of Oregon and City of Beaverton have violated their 'Oath of

77    Office' to their 'compact/Constitution' as to the 'Bill of Rights', as such operates upon such

78    'officers' by and through said 'oath' as applied in this matter against Ronald Charles Vrooman.

79    Also filed into this case was, applying to State of Oregon, which includes but not limited to City

80    of Beaverton, a municipal corporation, which terminates anything Ronald Charles Vrooman may

81    have signed, under threat, duress and coercion, or disclosure of nexus, liability or otherwise.

82    As such, in the failure and/or refusal of the State of Oregon, thru the prosecutor in this case, to

83    prove jurisdiction, for either State of Oregon or City of Beaverton  1) there was no 'offenses' 2)

84    that Warrant(s) issued against the Private Membership Association named; RONALD

85    CHARLES VROOMAN and/or the man; Ronald Charles Vrooman are null & void for lack of

86    jurisdiction,  3) that the Arrest warrant, the following Arraignment on 10/31/2016 and the "not

Ronald Charles Vrooman General Delivery, Beaverton, Oregon  [97005] 503 641 8375
ronvrooman38@gmail.com

87    guilty' pleas entered are also Null & Void as no probable cause, no crime, no right of action,

88    when no jurisdiction proven.

89    That, under necessity, Ronald Charles Vrooman, accepts for value the 'oaths of office' of all

90    'officers' pertaining to this matter, including but not limited to the Governor of the State of

91    Oregon, the Mayor and Council and Beaverton Police,  the Prosecutor(s), the Judge(s) of the

92    Beaverton Municipal Court in their lawful & legal duty to uphold their 'oath of office' as to the

93    Rights, titles and interest of the sentient man; Ronald Charles Vrooman and not to be compelled

94    into a foreign court and of a foreign jurisdiction …to be compelled to the liability of

95    'constitutional impermissible application of statute(s)', into an undisclosed 'Trust' matter where

96    Ronald Charles Vrooman is the 'Trustee in the Private Membership Association of RONALD

97    CHARLES VROOMAN.

98    That due to the above, this case is a nullity (null & void), as the State has failed to prove

99    jurisdiction and any such judgment from this court is a void judgment.

100

101    That, this court is a foreign court of a foreign jurisdiction as it displays a Maritime/Admiralty

102    National Flag and the State of Oregon, by and through the Prosecutor, failed to bring in and

103    exhibit the ' Contract' showing bona fide signature of Ronald Charles Vrooman, that gives this

104    foreign court jurisdiction over Ronald Charles Vrooman aside from any contract with the State of

105    Oregon, or that Ronald Charles Vrooman is a party to the State of Oregon Constitution and is

106    named in State statutes.

107    That, based upon the fact of 'silent tacit agreement' by the State of Oregon that no such

108    jurisdiction exists over the private sentient man; Ronald Charles Vrooman and such 'agreement'

109    being the Bond in this matter and all other facts, statements, or otherwise as stated herein, and

Ronald Charles Vrooman General Delivery, Beaverton, Oregon  [97005] 503 641 8375
ronvrooman38@gmail.com

110    the now unrebutted; Documents and Declarations are 'fact in the record of this matter', Plaintiff

111    is barred from moving forward as stated; no probable cause, no crime, no injured party, no right

112    of action, with no jurisdiction proven …and therefore this case is Null & Void by said silent tacit

113    agreement and any so-called judgment that would operate against Ronald Charles Vrooman

114    would be a void judgment.

115    That, Ronald Charles Vrooman, wrongly accused private man reserves all Rights at all times and

116    waives no Rights at any time including his time at $2,000.00 per hour not including monetary

117    damages for all injuries.

118

119    I, Ronald Charles Vrooman aver that any alleged Oregon judge must take compulsory

120    administrative and judicial notice of all the Documents filed and Declarations, enumerated

121    points, citations, any footnotes and all information added by reference in this matter.

122    Based upon the above facts, Ronald Charles Vrooman herein requests the court upon its own

123    motion to abate and dismiss this case in the interest of justice and set at liberty Ronald Charles

124    Vrooman.

125
126    Dated this 23 day of JANUARY , 2016e 7 Rev
127
128
129    without STATE OF OREGON
130
131    Without county of       Ronald Charles Vrooman   on Oregon
132    without WASHINTON       In The United States of America
133
134          CITY OF BEAVERTON
135    under penalty of Penjury
136    SIGNED and AFFIRMED before me on January 23, 2017
137
138
139
140

OFFICIAL SEAL
MELISSA MAE TUDINGER
NOTARY PUBLIC · OREGON
COMMISSION NO. 941448
MY COMMISSION EXPIRES AUG. 16, 2019

Ronald Charles Vrooman General Delivery, Beaverton, Oregon [97005] 503 641 8375
ronvrooman38@gmail.com

141
142
143
144
145  **Attachments:**
146  Challenge of Jurisdiction to the prosecutor
147  Medical letter from Sarah Goodlin M.Dd.
148  **Notice:**
149
150  1) the record of all the documents filed into this court of record's file by Ronald Charles
151  Vrooman, are to be seen as attached, that John T. Mercer judge of Beaverton Municipal Court
152  denied in his Dec. 28, 2016 filing he signed.
153

154  **Footnotes** (per paragraph # 7):

155  [1] State ex rel. Nagle v Sullivan, 98 Mont 425, 40 P2d 995,  99 ALR 321; Jersey City v Hague,
156  18 NJ 584, 115 A2d 8.

157  [2] Georgia Dep't of Human Resources v Sistrunk, 249 Ga 543, 291 SE2d 524.  A public official
158  is held in public trust. Madlener v Finley (1st Dist) 161 Ill App 3d 796, 113 Ill Dec 712, 515
159  NE2d 697, app gr 117 Ill Dec 226, 520 NE2d 387 and revd on other grounds 128 Ill 2d 147, 131
160  Ill Dec 145, 538 NE2d 520.

161  [3] Chicago Park Dist. v Kenroy, Inc., 78 Ill 2d 555, 37 Ill Dec 291, 402 NE2d 181, appeal after
162  remand (1st Dist) 107 Ill App 3d 222, 63 Ill Dec 134, 437 NE2d 783.

163  [4] United States v Holzer (CA7 Ill) 816 F2d 304  and vacated, remanded on other grounds  484
164  US 807,  98 L Ed 2d 18,  108 S Ct 53, on remand (CA7 Ill) 840 F2d 1343, cert den  486 US
165  1035,  100 L Ed 2d 608,  108 S Ct 2022 and (criticized on other grounds by United States v
166  Osser (CA3 Pa) 864 F2d 1056) and (superseded by statute on other grounds as stated in United
167  States v Little (CA5 Miss) 889 F2d 1367) and (among conflicting authorities on other grounds
168  noted in United States v Boylan (CA1 Mass) 898 F2d 230, 29 Fed Rules Evid Serv 1223).

169  [5] Chicago ex rel. Cohen v Keane, 64 Ill 2d 559, 2 Ill Dec 285, 357 NE2d 452, later proceeding
170  (1st Dist) 105 Ill App 3d 298, 61 Ill Dec 172, 434 NE2d 325.

171  [6] Indiana State Ethics Comm'n v Nelson (Ind App) 656 NE2d 1172, reh gr (Ind App) 659
172  NE2d 260, reh den (Jan 24, 1996) and transfer den (May 28, 1996).

173  Errors and omissions are consistent with intent. Use of this format in no way grants jurisdiction to the
174  State of Oregon or the Beaverton Municipal Court

          Administrative & Judicial Notice to Dismiss-UC794581-and return $2000.00 bail
175

RECEIVED

JAN 2 3

City Attorney's Office

Fled into UC7945181 √

VA Portland Health Care System
3710 SW US Veterans Hospital Road
Portland, OR 97239

Date: JAN 20, 2017

TO WHOM IT CONCERNS:

REGARDING : RONALD C VROOMAN, BEAVERTON, OR  97005

RECEIVED

JAN 2 3 2017

Beaverton Municipal

Mr. Vrooman requested a letter from me to request humanitarian treatment regarding his upcoming sentencing.

I am Mr. Vrooman's primary care physician.

Mr. Vrooman is a 78 year old man who receives medical care for the following issues:
Hypertension, Orthostatic Hypotension & history of syncope
Wandering atrial pacemaker
Melanoma in situ of back Actinic Keratosis
SENSORNEUR Hearing Loss BILAT
Constipation- slow transit
Decreased vitamin D
Sleep Disturbance- Mild Obstructive Sleep apnea
OSTEOARTHROSIS: Back Pain, foot pain (hallux rigidus),CARPAL TUNNEL SYNDROME
Chronic Headache
Gastroesophageal Reflux Disorder
Raynaud's phenomenon
Gout
BRONCHITIS
ALLERGIC RHINITIS
MALIGN NEOPL PROSTATE s/p total prostatectomy w/Urinary Incontinence
Transitional cell carcinoma of the bladder

For his chronic pain syndrome, Mr. Vrooman follows a complex regimen of exercises, heat treatment (including heating pad and hot bath), topical therapies and splints. He uses crutches and a cane as needed for pain.

Mr. Vrooman takes the following prescription and non-prescription medications:
1) Amlodipine besylate 2.5mg tab take three tablets by mouth every day for blood pressure for hypertension
2) Camphor/menthol/methyl salicylate patch apply 2 patches topically to affected area twice a day as  needed for pain. remove patch within 8 hours.
3) Drip collector manhood pouch #4200b use guard item twice a day as needed
4) Fluticasone prop 50mcg 120d nasal inhl inhale 2  sprays in each nostril every day
5) Hctz 25/triamterene 37.5mg tab take one-half tablet (12.5/18.75 mg) by mouth every day
6) Hydrocodone 7.5/acetaminophen 325mg tab by mouth every 4 hours as needed for pain
7) Losartan potassium 100mg tab take one-half tablet by mouth every 12 hours
8) Menthol/m-salicylate 10-15% top cream apply thin film topically to affected area three times a day as needed for pain
10) Selenium sulfide 2.5% lotion/shampoo apply with capful topically to affected area weekly

RECEIVED

JAN 2 3 7...

City Attorney's Office

11) Vitamin d 1000 unit tab take two tablets by mouth every day

active non-va medications
======================================================================
1) Non-va incont liner attends guards guard item twice a  day
2) Non-va multivitamin liquid,oral  mouth
3) Milk of Magnesia 2 tablespoons daily to maintain BM
4) bid dental care with Floss picks, intra dental brushes, oral analgesic
(benzocaine 20%)gel
5) nasal relief spray  oxymetazoline0.05% at bedtime and prn congestion.

Mr. Vrooman feels the complexity of his regimens to manage sleep, pain and
function means that care in a jail will lead to exacerbation of these issues
and of his medical problems. Please consider this when arriving at a
sentence.

Respectfully,

Sarah Goodlin MD
Chief, Geriatrics Section

Ronald C Vrooman
1-21-17

OFFICIAL SEAL
MELISSA MAE STUDINGER
NOTARY PUBLIC - OREGON
COMMISSION NO. 941448
MY COMMISSION EXPIRES AUG. 16, 2019

MMS 1/23/17

*[handwritten notes in right margin: Copy of onc Filed into court Records. Not SCANNED PLL  7/27/14  Proof of Service AVAilable]*

**To: Beaverton Municipal Court their # 7945181**

From: Ronald Charles Vrooman

**131.035 When departures, errors or mistakes in pleadings or proceedings are material.** No departure from the form or mode prescribed by law, error or mistake in any criminal pleading, action or proceeding renders it invalid, unless it has prejudiced the defendant in respect to a substantial right. [1973 c.836 §4]

I do lawful not legal. This is my best effort.

Ronald Charles Vrooman as Private Attorney Generals by the United States Congress lawfully authorized by the legislation of 42 U.S.C.1988 and also 18 U.S.C.1510 and 18 U.S.C. 1512 and to be known as "One of the People" also "Qualified Criminal Investigator" and "Federal Witness" and by unrebutted affidavit

Notice:

There will be a hearing on demurrer prior to the trial on 1-12-2017 with witnesses. I will have an expert witness on the extent of jurisdiction under the vehicle code. Pursuant to ORS 135.640.

**135.315 Types of pleading.** The only pleadings on the part of the defendant are the demurrer and plea. [Formerly 135.430]

**135.630 Grounds of demurrer.** The defendant may demur to the accusatory instrument when it appears upon the face thereof:

(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

(2) If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743;

(3) That the accusatory instrument charges more than one offense not separately stated;

   **(4) That the facts stated do not constitute an offense;**

(5) That the accusatory instrument contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action; or

(6) That the accusatory instrument is not definite and certain. [Amended by 1973 c.836 §184]

**135.640 When objections that are grounds for demurrer may be taken.** When the objections mentioned in ORS 135.630 appear upon the face of the accusatory instrument, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the accusatory instrument, or that the facts stated do not constitute an offense, may be taken at the trial, under the plea of not guilty and in arrest of judgment. [Amended by 1973 c.836 §185]

**174.100 Definitions.** As used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise:

(1) "Any other state" includes any state and the District of Columbia.    (2) "City" includes any incorporated village or town.    (3) "County court" includes board of county commissioners.    (4) "Husband and wife," "husband or wife," "husband" or "wife" means spouses or a spouse in a marriage.    (5) "May not" and "shall not" are equivalent expressions of an absolute prohibition.

(6) "Person" includes individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies.

(7) "Sexual orientation" means an individual's actual or perceived heterosexuality, homosexuality, bisexuality or gender identity, regardless of whether the individual's gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth.    (8) "State Treasury" includes those financial assets the lawful custody of which are vested in the State Treasurer and the office of the State Treasurer relating to the custody of those financial assets.    (9) "To" means "to and including" when used in a reference to a series of statute sections, subsections or paragraphs.

(10) "United States" includes territories, outlying possessions and the District of Columbia.    (11) "Violate" includes failure to comply. [Amended by 1953 c.145 §2; 1957 c.360 §1; 1963 c.213 §1; 1965 c.518 §1; 1967 c.409 §1; 1983 c.327 §1; 1993 c.73 §1; 1995 c.93 §30; 2001 c.671 §1; 2007 c.100 §1; 2015 c.629 §33]

**183.310** (8) "Person" means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency.

**183.310**(10) "Small business" means a corporation, partnership, sole proprietorship or other legal entity formed for the purpose of making a profit, which is independently owned and operated from all other businesses and which has 50 or fewer employees. [1957 c.717 §1; 1965 c.285 §78a; 1967 c.419 §32; 1969 c.80 §37a; 1971 c.734 §1; 1973 c.386 §4; 1973 c.621 §1a; 1977 c.374 §1; 1977 c.798 §1; 1979 c.593 §6; 1981 c.755 §1; 1987 c.320 §141; 1987 c.861 §1; 2003 c.75 §71; 2005 c.523 §8; 2007 c.288 §9] (8) "Person" means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency.

**153.039 Stop and detention for violation.** (1) An enforcement officer may not arrest, stop or detain a person for the commission of a violation except to the extent provided in this section and ORS 810.410.

(2) An enforcement officer may stop and detain any person if the officer has reasonable grounds to believe that the person has committed a violation. An enforcement officer may stop and detain any employee, agent or representative of a firm, corporation or other organization if the officer has reasonable grounds to believe that the firm, corporation or other organization has committed a violation.     (3) Except as provided in subsection (4) of this section, the period of detention may be only as long as is necessary to:     (a) Establish the identity of the person, firm, corporation or organization believed to have committed the violation;     (b) Conduct any investigation reasonably related to the violation; and     (c) Issue a citation for the violation. (4) The authority of an enforcement officer to stop and detain a person for a traffic violation as defined by ORS 801.557 is governed by ORS 810.410. [1999 c.1051 §10]

The below information proves that people are not defined.

**801.385 "Pedestrian."** "Pedestrian" means any person afoot or confined in a wheelchair. [1983 c.338 §69]

**801.387 "Person with a disability."** "Person with a disability" means:

(1) A person who has severely limited mobility because of paralysis or the loss of use of some or all of the person's legs or arms;     (2) A person who is affected by loss of vision or substantial loss of visual acuity or visual field beyond correction; or     (3) A person who has any other disability that prevents the person from walking without the use of an assistive device or that causes the person to be unable to walk more than 200 feet, including but not necessarily limited to:     (a) Chronic heart condition;     (b) Emphysema;     (c) Arthritis;     (d) Rheumatism; or     (e) Ulcerative colitis or related chronic bowel disorder. [Formerly 801.235]

**801.390 "Pole trailer."** "Pole trailer" means a trailer attached or secured to the towing vehicle and ordinarily used for transporting long or irregular loads capable generally of sustaining themselves as beams between the towing vehicle and the trailer. The definition in this section is based on design features and, except as otherwise provided in this section, does not prohibit a pole trailer from fitting into another category of trailer based on use. [1983 c.338 §70]

161.015

(5) "Person" means a human being and, where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality.

The U.S. Constitution defined "people" when they wrote, "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

People - : a body of persons making up a assembly, race, tribe, or nation. - one of the people of Oregon is called an Oregonian

Filed into both federal courts on the Counter Claim in common law court of record.

Therefore: By statute I am <u>one of the people</u> and do not qualify as a person. I am not in the jurisdiction of this court.

# IN THE MUNICIPAL COURT OF THE CITY OF BEAVERTON
## WASHINGTON COUNTY, STATE OF OREGON

| | | |
|---|---|---|
| STATE OF OREGON. | ) | **JUDGMENT** |
| Plaintiff. | ) | |
| | ) | CA No.:    16-01047 |
| v. | ) | |
| | ) | Case No.:    UC794518-1 |
| | ) | |
| **VROOMAN, RONALD CHARLES,** | ) | City Attorney:    KEMPTON. TIM |
| Defendant. | ) | |
| | | Defense Attorney: |

It is hereby adjudged that the above-named defendant has been convicted of    FAIL TO DISPLAY OR POSSESS
OPERATORS LICENSE (794518-1)

### Charge : **FAIL TO DISPLAY OR POSSESS OPERATORS LICENSE  (794518-1)**

**Imposition of sentence suspended**

- Bench probation to the Court for a period of 36 months, ending 01/24/2020.
  Obey all General Conditions of Probation as listed later in this Judgment.
- Serve 20 days in jail. beginning at 01/24/2017 07:00 AM.
- Pay fine of S1,000.00.
- Pay Suspension Fee S15.00.
- Pay Warrant Fee S50.00.
- Pay Security Release Fee S300.00.
- Do not drive without valid license. insurance and within restrictions including no alcohol in vehicle.
- Apply security to the financial obligations.
- Not drive a vehicle, even with a valid driver's license, that is not properly registered, license plates and registration
  stickers.

### GENERAL CONDITIONS OF PROBATION
1 .  Pay supervision fee. fines, restitution. or other fees ordered by the Court.
2 .  Remain in the State of Oregon until written permission to leave is granted by the Court.
3 .  If physically able, find and maintain gainful full-time employment, approved schooling, or a full-time combination of
     both.  Any waiver of this requirement must be based on a finding by the Court stating the reasons for the waiver.
4 .  Change neither employment nor residence without prior permission from the Court.
5 .  Obey all municipal. county. state. and federal laws.
6 .  Not possess weapons. firearms, or dangerous animals.
7 .  Not use or possess controlled substances except pursuant to a medical prescription.

**You will remain under the jurisdiction of the Court for the length of probation. Failure to comply with the
Conditions of Probation will result in futher action by the Court. The Court will enforce its order by issuing a
warrant for your arrest. You could be sentenced to the maximum term in jail if you fail to comply with your
probation. Any evaluation, counseling or testing ordered by the Court will be at your expense.**

### MONEY AWARD
It is adjudged that the defendant pay the following obligations. which shall be a money award. All statutory assessments
and fees applicable to each conviction are imposed and are to be added by the Clerk of the Court as a money award, unless
waived on this judgment. If bail/security posted, it shall be applied to the obligations below.

*Judgment Creditor: CITY OF BEAVERTON*          *Judgment Debtor: DEFENDANT*

Pay a total of  S1,365.00 to be applied as follows:
- Pay a fine of  S1,000.00.
- Pay Suspension Fee  S15.00.
- Pay Warrant Fee  S50.00.

ePrint

- Pay Security Release Fee $300.00.

**Unless installment arrangements have been made with the Clerk's Office, all fines, fees, and assessments are due and owing at 5:00 PM on the date of this Judgment.**

IT IS SO ADJUDGED THIS 24th day of January, 2017

_John T. Mercer_
Signature of Judge
     John Mercer
Name of Judge